UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

LEAGUE OF WOMEN VOTERS OF NEW YORK STATE;
PETRA GOPFERT; and LOULISE ERSKINE,

                            *Plaintiffs*,

                    v.

PETER S. KOSINSKI, in his official capacity as Co-Chair of
the State Board of Elections; DOUGLAS A. KELLNER, in
his official capacity as Co-Chair of the State Board of
Elections; ANDREW J. SPANO, in his official capacity as
Commissioner of the State Board of Elections; ANTHONY J.
CASALE, in his official capacity as Commissioner of the
State Board of Elections; TODD D. VALENTINE, in his
official capacity as Co-Executive Director of the State Board
of Elections; and KRISTEN ZEBROWSKI STAVISKY, in
her official capacity as Co-Executive Director of the State
Board of Elections,

                            *Defendants*.

_____

**CIVIL ACTION NO. 1:22-cv-4084**

**COMPLAINT**

Plaintiffs League of Women Voters of New York State, Petra Gopfert, and Loulise Erskine,

as and for their complaint against Defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J.

Spano, Anthony Casale, Todd D. Valentine, and Kristen Zebrowski Stavisky (collectively,

"Defendants"), with knowledge as to themselves and as to the facts within their possession, and

otherwise on information and belief, hereby allege as follows:

## NATURE OF THE PROCEEDINGS

1.      In a debacle of the State's own making, New York's 2022 election process has gone

off the rails and, absent this Court's immediate intervention, will severely impinge the federal

constitutional rights of voters. The New York Court of Appeals has struck down as constitutionally

invalid New York's maps for State Senate and federal congressional districts, and a state court has

pushed the primary date for those offices to August 23, 2022 while it obtains a special master's

assistance in creating valid maps by May 20, 2022. Meanwhile, despite the Court of Appeals'
invalidation of the congressional maps, Defendants—officials of the New York State Board of
Elections acting in their official capacity—unlawfully certified the primary ballot for statewide
offices[1] on May 4, 2022, listing candidates who necessarily did not comply with a fundamental
requirement of the Election Law: that designating petitions to add candidates to the ballot gather
signatures from half of the State's congressional districts as they are configured on the date of the
primary and general elections.

      2.    Defendants have certified and maintained the June 28, 2022 primary date
notwithstanding this glaring legal deficiency of the primary ballot with respect to statewide offices,
such as the office of governor. While statewide-office candidates may be placed on the primary
ballot by designating petition if they gather the requisite signatures from one-half of the
congressional districts, N.Y. Election Law §§ 6-118, 6-136, there are currently *no* congressional
districts as a result of the Court of Appeals' decision. In addition to certifying the inclusion of
candidates who do not qualify, Defendants' certification unlawfully excludes from the primary ballot
for statewide races all would-be candidates who may qualify and would seek to be qualified for the
ballot under the to-be-adopted congressional maps. Meanwhile, the state court superintending the
redistricting process for the State Senate and congressional maps has required *independent*
candidates for statewide offices to comply with the law and obtain signatures under the to-be-adopted
congressional maps to qualify for the general election ballot. Thus, unqualified party-affiliated
statewide candidates will appear on the primary ballot, and independent statewide candidates must
find—in less than two weeks—the requisite number of signatures to stand in the general election.

---

[1] The statewide offices are Governor, Lieutenant Governor, Attorney General, and Comptroller.

3.      Defendants have chosen to ignore the unconstitutional, inequitable, and unlawful status of the primary ballot with respect to statewide offices. Instead, they are charging ahead with the June 28 primary despite the naked and unacceptable deprivation of the First and Fourteenth Amendment and state constitutional rights of candidates and voters.

4.      The June primary for the statewide offices cannot proceed consistent with the Constitution.  First, as alleged above, Defendants' certification of the primary ballot for the statewide races is plainly not in accordance with state law. Thus, there are no qualifying candidates under the designating petition process, and the ballots have been certified without allotting any time for designating petitions to be filed in accordance with valid congressional maps.

5.      Second, as a result, the current statewide election process unlawfully deprives voters of their First and Fourteenth Amendment rights to vote for and support would-be candidates for statewide office who wish to gather the requisite signatures in light of constitutionally valid congressional maps. The current election process foisted on voters and would-be candidates by Defendants plainly discriminates against outside candidates and their voters and supporters in favor of candidates handpicked by the political-party leadership (who do not need to go through the designating-petition process). Indeed, cementing that discrimination, the state court overseeing redistricting, in an unprecedented self-styled "advisory opinion," declared that *independent* candidates for statewide office will be required to obtain signatures—under the more onerous rules applying to independent candidates—on the basis of the valid congressional maps to be issued on May 20. Dkt. No. 409 ("Advisory Opinion"), *Harkenrider v. Hochul*, No. E2022-0116CV (N.Y. Sup. Ct. Steuben Cty.) ("*Harkenrider I*"). Thus, would-be statewide candidates are both barred from the major-party primaries and forced to run, if at all, under the more stringent signature-gathering

requirements applicable to independent candidates. The result is that voters have been unlawfully deprived of the ability to vote for and support would-be statewide candidates in the primary process.

## THE PARTIES

6.    Plaintiff League of Women Voters of New York State ("LWVNYS") is a nonpartisan, not-for-profit organization dedicated to promoting the informed and active participation of citizens in government. As part of its mission to empower citizens and strengthen public participation in government, the League works to increase voter registration and turnout, encourages its members and the people of New York to exercise their right to vote as guaranteed by the Constitution, and strives to protect that right from unnecessary barriers to full participation in the electoral process. Formed in 1919 after the passage of a constitutional amendment granting women's suffrage, the League has evolved to become the foremost guardian of the voting rights of all eligible voters in New York. The League is affiliated with the League of Women Voters of the United States and has 45 local leagues throughout New York.

7.    Plaintiff Petra Gopfert is a New York resident, registered to vote in New York since 2017.  She is currently registered as a member of the Democratic Party.  She has regularly voted in elections for which she was qualified to do so.  If doing so would have legal effect, Ms. Gopfert would seek to sign a designating petition with respect to candidates for the Governor's race under the designation process set forth in New York's election law.  In particular, Ms. Gopfert would sign and support a petition to add Andrew Cuomo to the Democratic Party primary ballot for Governor.

8.    Plaintiff Loulise Erskine is a New York resident, registered to vote in New York since 2000.  She is currently registered as a member of the Democratic Party.  She has regularly voted in elections for which she was qualified to do so.  If doing so would have legal effect, Ms. Erskine would seek to sign a designating petition with respect to candidates for the Governor's

race under the designation process set forth in New York election law. In particular, Ms. Erskine would sign and support a petition to add Paul Nichols to the Democratic primary ballot for Governor.

9. Defendants Peter S. Kosinski, Douglas A. Kellner, Andrew J. Spano, Anthony Casale, Todd D. Valentine, and Kristen Zebrowski Stavisky are officials of the New York State Board of Elections and are sued in their official capacities for actions taken under state law. The State Board is a bipartisan administrative agency within the executive department of the state government vested with the responsibility for the administration and enforcement of all laws relating to elections. *See* N.Y. Election Law § 3-102. The State Board alone has the authority, through its commissioners and directors, to direct the actions of all local boards of elections. It is responsible for "issu[ing] instructions and promulgat[ing] rules and regulations relating to the administration of the election process." *Id*. § 3-102(1).

## JURISDICTION AND VENUE

10. Plaintiffs bring this action under 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

11. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws of the United States and involve the assertion of a deprivation, under color of state law, of a right under the Constitution of the United States.

12. This Court has the authority to enter a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and authority to enter injunctive relief under Federal Rule of Civil Procedure 65.

13. This Court has personal jurisdiction over Defendants, who are sued in their official capacities and reside within this State.

14.     Venue is proper in the Southern District of New York because a substantial part of the events that give rise to Plaintiffs' claims have occurred and will occur in this District. *See* 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### I.     New York Creates An Independent Commission To Apportion Districts

15.     The problem of partisan gerrymandering has long been recognized in New York. As far back as 1966, the LWVNYS announced its Statement of Position that "whoever is responsible for districting should utilize an impartial commission for drawing the lines." In 2007, the Committee on Election Law of the Association of the Bar of the City of New York called for a "comprehensive amendment of the reapportionment and redistricting provisions of the New York State Constitution." As the Committee stated:

> Under the current system of redistricting, as practiced during the last three decades of divided partisan control of the Legislature, individual legislators find themselves more beholden to their leaders for re-election than to their constituents. This form of incumbency protection produces noncompetitive elections, permanent legislative deadlock, and a Legislature unresponsive to the will and interests of the voters. A constitutional amendment is necessary to mandate redistricting criteria, and to guarantee a process for decennial redistricting that will foster electoral competition and responsive government.[2]

16.     In 2014, the citizens of New York amended the Constitution to combat political manipulation and gerrymandering of voting districts. These amendments, and implementing statutes, created an independent redistricting commission (the "IRC"), as well as an "exclusive method of redistricting" congressional, State Senate, and State Assembly districts. *Harkenrider III*, 2022 WL 1236822, at *2, *5, *8; N.Y. Const. art. III, § 4(b).

---

[2] N.Y. City Bar Comm. on Election Law, A Proposed New York State Constitutional Amendment to Emancipate Redistricting from Partisan Gerrymanders: Partisanship Channeled for Fair Line-Drawing, at 1 (Mar. 2007), *available at* https://www.nycbar.org/pdf/report/redistricting_report03071.pdf.

17.     This constitutionally mandated method was designed to limit legislative gamesmanship—to prevent a single political party from steering the redistricting process to its own ends. *Harkenrider III*, 2022 WL 1236822, at *2. It was further designed to promote citizen participation, fair representation, and, ultimately, confidence in the outcome of elections, thereby ushering in "a new era of bipartisanship and transparency." *Id*.

18.     The IRC is comprised of ten members. Eight of the members are appointed by the majority and minority leaders of the Senate and Assembly. The eight members then appoint the remaining two members. This bipartisan group is "constitutionally required to pursue consensus to draw redistricting lines" and follow a transparent process that engages the public as it crafts new maps to propose to the Legislature. *Id*. at *7.

19.     Critically, the 2014 constitutional reforms constrain the Legislature's power to bypass the IRC. The reforms require the Legislature to consider and vote on the maps proposed by the IRC. After the IRC drafts maps and holds public hearings, the IRC must submit a first set of maps to the Legislature by January 15 of the second year following the Census. *Id*. at *5 (citing N.Y. Const. art. III, § 4(b)). If either the Legislature or Governor reject the maps, the IRC must revise and submit new maps to the Legislature within 15 days, but no later than February 28. *Id*. The Legislature must then consider and vote on this second set of maps. *Id*.

20.     Only in the event the Legislature votes down the second set of IRC maps—which it must do in an "up or down" vote (i.e., without making modification)—does the New York Constitution permit the Legislature to undertake amending the IRC's proposed maps and ultimately enact its own district maps. N.Y. Const. art. III, § 4(b); N.Y. Legis. Law § 93(1); *see Harkenrider III*, 2022 WL 1236822, at *2.

21.     The IRC process was thus "crafted to guarantee that redistricting maps have their origin in the collective and transparent work product of a bipartisan commission." *Harkenrider III*, 2022 WL 1236822, at *7. The process ensures that the IRC—a bipartisan group independent from the Legislature—has "a substantial and constitutionally required role in the map drawing process" as a "precondition to redistricting legislation." *Id*. at *8.

22.     After the constitutional deadline for the IRC to submit a second redistricting plan, the only alternative to the carefully crafted process set forth in Article III, § 4, is "court intervention following a violation of the law." *Id*. at *8, *12.

23.     To that end, the Constitution and State statute empower "any citizen" to enforce the 2014 amendments, expressly conferring standing on any citizen of New York, or organization comprised of citizens to bring an action to challenge the Legislature's enacted maps as either procedurally or substantively defective. *Id*. at *4 (quoting N.Y. Const. art. III, § 5 and N.Y. Unconsolidated Laws § 4221).

24.     The Legislature's maps are procedurally defective where, as set forth above, the IRC fails to present a plan to the Legislature, or the Legislature fails to consider and vote on such a plan. *Id*. at *9. The Legislature's maps are substantively defective where they have been drawn with an intent or motive "to 'discourage competition' or 'favor or disfavor incumbents or other particular candidates or political parties.'" *Id*. at *10 (quoting N.Y. Const. art. III, § 4(c)(5)). Either such procedural or substantive defect renders the Legislature's maps unconstitutional, necessitating judicial intervention and remedy pursuant to Article III, § 4. *Id*. at *11-12.

II.      **Redistricting For The 2022 Elections Takes Place**

25.      As alleged above, every ten years, New York must redraw its legislative districts to account for population changes reported in the Federal Census. *Harkenrider III*, 2022 WL 1236822, at *7 (citing N.Y. Const. art. III, § 4).

26.      The State's prior redistricting occurred in 2012, after the 2010 Census. Ten years later, new maps are constitutionally mandated. *Id*. As required by the Constitution, the IRC held public meetings across the State throughout 2021 to hear public testimony about draft maps and the redistricting process. N.Y. Const. art. III, § 4(c).

27.      The IRC held its last public hearing on December 5, 2021, and the final deadline for public comment on draft maps was December 6.

28.      With public hearings and comments closed, the IRC members began negotiations amongst themselves to finalize a set of maps to submit to the Legislature. But the IRC members were unable to reach an agreement or consensus.

29.      On January 3, 2022, the Democratic delegation and their appointee voted for one redistricting plan, and the Republican delegation and their appointee voted for another. *Harkenrider III*, 2022 WL 1236822, at *2.

30.      The Legislature received both plans from the IRC and voted upon them without amendment, rejecting both without public input. *Id*. It notified the IRC of its rejection on January 10, 2022. *Id*.

31.      Consequently, under Article III, § 4(b) of the New York Constitution, the IRC was required to draft a new redistricting plan to submit to the Legislature within 15 days, by January 25, 2022. And the Legislature was required to review and vote on this second plan.

32.     Rather than submit a new plan, the IRC informed the Legislature that it was again deadlocked and would not send a second set of maps to the Legislature for review or a vote. *Id.* The January 25 deadline passed without the IRC submitting any new maps, or the Legislature voting on such maps, as was constitutionally required. *Id*.

33.     Instead, over the next week, the Democratic-controlled Legislature drafted and enacted its own set of maps—along a party-line vote, without input from Republican members of the Legislature or the public—as to congressional, Senate, and Assembly districts. *Id*.

34.     Despite the undeniable infirmity of the maps, now recognized by the Court of Appeals, Democratic Governor Hochul signed these maps into law on February 3, 2022.

**III.     The Maps Are Struck Down And The Primaries For Certain Offices Are Adjourned**

35.     The same day the Governor signed the maps into law, New York citizens filed a special proceeding in New York Supreme Court, Steuben County (the "Steuben Court"), *see generally Harkenrider I*, challenging the constitutionality of the congressional and (after amending their petition) State Senate maps.

36.     On March 31, 2022, following a bench trial and extensive expert testimony, the Steuben Court voided the congressional and State Senate maps, holding that the IRC and Legislature had failed to follow the necessary constitutional procedure for submitting and reviewing a second set of redistricting plans when the Legislature rejected the IRC's first redistricting plan.

37.     The Steuben Court further held that the congressional maps had been drawn with impermissible political bias "to significantly reduce the number of competitive races"—i.e., were gerrymandered—and were void for that reason as well.

38.     The Steuben Court also voided the Assembly maps because "[t]he same faulty process was used for all three maps" and "[t]herefore new maps will need to be prepared for the Assembly Districts as well." Decision & Order, Dkt. No. 243, at 10, *Harkenrider I*.

39.     On appeal, the Fourth Department vacated the Steuben Court's holding that the State Senate and Assembly maps were procedurally defective and therefore void but held the congressional maps were an invalid partisan gerrymander. *Harkenrider v. Hochul*, No. 22-00506, 2022 WL 1193180, at *3 (4th Dep't April 21, 2022) ("*Harkenrider II*").

40.     Six days later, on April 27, 2022, the New York Court of Appeals reversed the Fourth Department, reinstating the Steuben Court's decision that "the legislature and the IRC deviated from the constitutionally mandated procedure" and so the congressional, State Senate, and Assembly maps were all defective. *Harkenrider III*, 2022 WL 1236822, at *5. "[T]here can be no question," the Court of Appeals found, "that the drafters of the 2014 constitutional amendments and the voters of this state intended compliance with the IRC process to be a constitutionally required precondition to the legislature's enactment of redistricting legislation." *Id*. at *9. Indeed, "no one disputes" that the IRC and Legislature had "failed to follow the procedure commanded by the State Constitution." *Id*. at *1. The Court of Appeals also held that the congressional maps were substantively unconstitutional because they were constructed with an impermissibly partisan purpose.

41.     The Court of Appeals therefore remanded the matter to the Steuben Court to craft and adopt redistricting maps in a court-supervised process, as authorized by Article III, § 4(e) of the New York Constitution. *Id*. Judicial oversight, the Court Appeals explained, is "required to facilitate the expeditious creation of constitutionally conforming maps for use in the 2022 election and to safeguard the constitutionally protected right of New Yorkers to a fair election." *Id.* at *1.

42.     Although the Court of Appeals noted that the need for new maps would likely require moving the congressional and Senate primaries from June to August, it was "confident that . . . [the Steuben Court] can swiftly develop a schedule to facilitate an August primary election, allowing time for the adoption of new constitutional maps, the dissemination of correct information to voters, [and] the completion of the petitioning process." *Id.*

43.     The Steuben Court promptly recognized that the need to create new maps created "time pressure" that would make a June 28 primary difficult to execute. Preliminary Order, Dkt. No. 301, *Harkenrider I.* Therefore, after consulting with the court-appointed Special Master and the Board of Elections, the Steuben Court pushed back the primaries for congressional and State Senate elections from June 28 to August 23, 2022. *See id.*

## IV.     Statewide Primaries

44.     On February 1, 2022, Defendants certified the offices to be filled during the 2022 General Election (to be held on November 8, 2022) pursuant to Section 4-106 of the New York Election Law.

45.     On May 4, 2022, Defendants and the NYS BOE certified primary ballots, N.Y. Election Law § 4-110, for the scheduled June 28, 2022 primary, *see id.* at § 8-100(1)(a), for the following offices (the "Statewide Offices"):

      a.     Governor of New York

      b.     Lieutenant Governor of New York

      c.     New York Attorney General

      d.     New York Comptroller

46.     Any individual may collect signatures, in compliance with State law, to appear on the primary ballot for the Statewide Offices. N.Y. Election Law § 6-136.

47.     However, to appear on a ballot for a primary for a statewide office, a potential candidate must obtain signatures from voters who meet specific residency requirements, and these residency requirements are tied to the boundaries of congressional districts. *See, e.g.*, N.Y. Election Law § 6-138.

48.     Thus, Section 6-136 of the Election Law requires any such individual desiring to appear on the primary ballot meet the following requirement:

> Petitions for any office to be filled by the voters of the entire state must be signed by not less than fifteen thousand or five per centum, whichever is less, of the then enrolled voters of the party in the state (excluding voters in inactive status), of whom not less than one hundred or five per centum, whichever is less, of such enrolled voters ***shall reside in each of one-half of the congressional districts of the state***.

49.     In fact, as a chart published by the New York Board of Elections shows (reproduced below), to appear on *any ballot* for *any office* in New York—statewide or local—a candidate must gather signatures within the relevant district boundaries:

**SIGNATURE REQUIREMENTS FOR DESIGNATING AND OPPORTUNITY TO BALLOT PETITIONS** §6-136

5% of the active enrolled voters of the political party in the political unit or the following, whichever is less:

For any office to be filled by all the voters of:

| | |
|---|---|
| The entire state | 15,000 |
| (with at least 100 or 5% of enrolled voters from each of one-half of the congressional-districts) | |
| *New York City | 7,500 |
| *Any county or borough of NYC | 4,000 |
| *A municipal court district within NYC | 1,500 |
| *Any city council district within NYC | 900 |
| Cities/counties having more than 250,000 inhabitants | 2,000 |
| Cities/counties having more than 25,000 but not more than 250,000 inhabitants | 1,000 |
| Any city, county, councilmanic or county legislative districts in any city other than NYC | 500 |
| Any congressional district | 1,250 |
| Any state senatorial district | 1,000 |
| Any assembly district | 500 |
| Any county legislative district | 500 |

any political subdivision contained within another political subdivision, except as herein provided, requirement is not to exceed the number required for the larger subdivision; a political subdivision containing more than one assembly district, county or other political subdivision, requirement is not to exceed the aggregate of the signatures required for the subdivision or parts of subdivision so contained.

***NOTE**: Section 1057-b of the New York City Charter supersedes New York Election Law signature requirements for Designating and OTB petitions and Independent nominating petitions with respect to certain NY City offices.*

50.     However, no valid congressional districts exist in New York; they will not exist until, according to the Steuben Court, May 20.

51.     After the congressional maps are redrawn and adopted, the signatures that candidates have already obtained may not satisfy the requirements for designating petitions set by state law.

52.     The priority rule for designating petitions provides a further reason for reopening the certification period for currently certified candidates to obtain new signatures, in addition to allowing new candidates the opportunity to collect signatures. Under this rule:

> If a voter shall sign any petition or petitions designating a greater number of candidates for public office or party position than the number of persons to be elected thereto his signatures, if they bear the same date, shall not be counted upon any petition, ***and if they***

14

**bear different dates shall be counted in the order of their priority of date,** for only so many designees as there are persons to be elected.

*Id.* § 6-134(3) (emphasis added). Thus, if that rule were stringently applied to a new period for obtaining signatures for designating petitions, signatories wishing to support new candidates could be deprived completely of the opportunity to express their associational and political speech rights in support of candidates seeking to run on the basis of valid maps. After all, those signatories and voters may well chose to exercise their rights differently under new maps and given new candidates, and anyway would be deprived of the ability to make that decision. The result: prior certified candidates would enjoy an unfair advantage relative to new candidates, to the detriment of the voters.

53.     This Court should reopen the period to current statewide primary candidates for obtaining such designating petitions, so that they may obtain new signatures and fulfill the requirements of New York law.

54.     This Court should further reopen the period to obtain signatures and file designating petitions for potential new candidates who wish to run for statewide office. New Yorkers—both voters and candidates—should not be denied this opportunity because the Legislature enacted poisoned maps.

55.     Accordingly, the primary dates for statewide offices—Governor, Lieutenant Governor, Attorney General, and Comptroller—should also be pushed back from June 28 to August 23, 2022.

**V.       Independent Nominating Petitions**

56.     While the Steuben Court did not address designating petitions for party-affiliated persons wishing to appear on the primary ballot for statewide office, State Senate, or U.S.

Congress, it did address the predicament of persons wishing to appear on the general election ballot as independent candidates for statewide office.

57.     The Advisory Opinion stated that, based on *ex-parte* communications the Court had with the Board of Elections, "there is some confusion which has developed" concerning the time for gathering signatures for "Independent Nominating Petitions" (*i.e.*, individuals who wish to appear on the general election ballot, independent of party affiliation). The Advisory Opinion, however, went on to address only "[t]he question . . . as to what persons seeking statewide office [as independents] should do with regard to gathering signatures since there currently are no Congressional districts." *Id.* at 1.

58.     The Advisory Opinion stated that the Court "expects to have the new Congressional maps finalized and published by May 20, 2022." *Id*. As the Court recognized, "a potential candidate does not currently know the boundaries for [the] various Congressional Districts." *Id.* at 2. The Court nonetheless stated that "the [independent] candidate should still be gathering signatures." *Id*. The Court further advised that "once the [new] Congressional map has been established" it will be "up to the candidate to make sure he/she has the appropriate number of signatures from the appropriate number of districts." *Id*.

59.     As the Court observed, "Election Law 6-158(9) requires the petition for an independent nomination for office to be filed not earlier than 24 weeks and not later than 23 weeks preceding the general election." *Id*. The Court hewed to this deadline, stating that "those petitions will need to be filed between May 24th [and] May 31st." *Id*.

60.     The Court also stated that "Election Law 6-138(4) sets a six week time period for the gathering of signatures for Independent petitions." *Id*. By setting May 31 as the last day to file Independent Nominating Petitions, the Court *shortened* that period, even though it had also stated

that "this court does not intend to alter the time frame for gathering signatures for Independent Nominating Petitions for the statewide elections." *Id.* at 1–2.[3]

61.     The Steuben Court has *lowered* the signature-quantity requirement for *other* offices, such as for petitions to appear on the State Senate and federal congressional ballots, but has not done so for independent petitions.  *See* Dkt. No. 524, *Harkenrider I.*

62.     Defendants are enforcing and will continue to enforce the above restrictions regarding both major-party and independent candidates, even though on their face the restrictions discriminate between voters depending on the voter's political preference.

63.     A voter who wishes to petition for her preferred candidate for a statewide race to appear on a major party's ballot is unable to because the period has not reopened.

64.     Moreover, there are currently no existing districts in New York, and thus no way to comply with the signature-gathering requirements anyway. *See supra* at ¶ 40.

65.     However, those voters supporting independent candidates, who are not affiliated with a party, may continue with the signature-gathering process, and, under the Advisory Opinion, may cure any defects with the signatures gathered (depending on the contours of the new maps) by May 31, 2022.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983
### Violation of the First and Fourteenth Amendments to the U.S. Constitution
### Free Association And Right to Effective Vote
### (Voters For Statewide-Office Candidates In Party Primaries)

66.     Plaintiffs hereby incorporate their allegations stated in Paragraphs 1 through 65.

67.     A potential candidate who wishes to appear on the primary ballot for statewide office is prevented from doing so because the ballot has been unlawfully certified.

---

[3] More accurately, Section 6-138 (4) provides that "[a] signature made earlier than six weeks prior to the last day to file independent petitions shall not be counted."

68.    Any such potential candidate must obtain signatures from voters who meet specific residency requirements, and these residency requirements are tied to the boundaries of congressional districts.

69.    However, the congressional districts set by the Legislature were declared unconstitutional under the New York State Constitution. The state court superintending the redistricting process for congressional maps has stated that new maps will not be issued until May 20, 2022.

70.    Would-be candidates for statewide office are not permitted to collect signatures from these to-be-adopted districts in order to petition to be placed on the primary ballot and stand for election in a party primary.

71.    Likewise, voters seeking to provide their signatures on a designating petition cannot provide such signatures. Nor can voters cast an effective vote for their preferred candidate or support him in the primary for the party in which they are registered.

72.    In its Advisory Opinion, the Steuben County court stated that there will be a period after the implementation of constitutional congressional district maps and before the May 31, 2022 deadline during which independent nominating petitions may be submitted.

73.    There is no provision for the submission of designating petitions for candidates affiliated with major parties seeking to appear on the ballot.

74.    The primary ballots Defendants certified for the statewide races list candidates who necessarily could not have qualified under Election Law 6-136(1), which requires signatures from voters residing in "each of one-half of the congressional districts of the state." No such valid districts existed when Defendants certified the primary ballots, so Defendants have implemented an electoral regime in which they have expressly waived state-law requirements for certain

candidates. This regime serves no state interest, discriminates against supporters of would-be major-party candidates, and violates the free-association rights and right to an effective vote of supporters of would-be candidates.

75.   Additionally, denying major party candidates an opportunity provided to independent candidates serves no state interest, discriminates against both would-be major-party candidates for statewide office, and violates voters' right to free association and right to cast an effective vote.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983**
**Violation of the First and Fourteenth Amendments to the U.S. Constitution**
**Free Association And Right to Effective Vote**
**(Voters for Independent Statewide Candidates)**

76.   Plaintiffs hereby incorporate their allegations stated in Paragraphs 1 through 65.

77.   A potential independent statewide candidate who wishes to appear on the general election ballot must obtain signatures from voters who meet specific residency requirements, and these residency requirements are tied to the boundaries of congressional districts.

78.   Election Law 6-138(4) sets a six-week time period for the gathering of signatures for Independent petitions.

79.   The Steuben Court's May 5 Advisory Opinion sets May 31 as the last day to file Independent Nominating Petitions, thereby *shortening* the six-week period to 11 days.

80.   To qualify for the ballot, a candidate must submit an independent nominating petition with 45,000 signatures. *See* N.Y. Election Law § 6-141. While the Steuben Court has lowered the signature-quantity requirement for other offices, such as State Senate and Congress, by approximately 15%, it has not done so for independent nominating petitions.

81.   A state cannot discriminate against voters who wish to support candidates other than those aligned with an existing political party.

82.     Shortening the statutory period serves no state interest, imposes an undue burden on and discriminates against independent candidates, and violates voters' right to free association and right to cast an effective vote.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Enjoin Defendants from holding the primary election for New York statewide offices (Governor, Lieutenant Governor, Attorney General, and Comptroller) on June 28, 2022;

B.     Direct Defendants to postpone the primary election for New York statewide offices (Governor, Lieutenant Governor, Attorney General, and Comptroller) to August 23, 2022, thereby aligning the primary election date with the adjourned primary election dates for the State Senate and U.S. Congress;

C.     Direct Defendants to require all candidates for New York statewide offices (Governor, Lieutenant Governor, Attorney General, and Comptroller)—including those listed on the May 4 certified ballot, except those designated by a party pursuant to N.Y. Election Law § 6-104(1)—to submit new designating petitions pursuant to state law for a new primary ballot for statewide offices to be certified by Defendants in advance of the August 23 primary.

D.     Direct Defendants to establish a reasonable process for additional candidates for New York statewide offices (Governor, Lieutenant Governor, Attorney General, and Comptroller) to appear on the certified primary ballot pursuant to applicable state law, including by extending the deadline to no earlier than June 20 for gathering signatures for party-affiliated designating petitions;

E.     Direct Defendants to extend the time period to no earlier than June 20 for gathering signatures for independent nominating petitions for the general election ballot for New York statewide offices;

F.      Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred

in bringing this action, pursuant to 42 U.S.C. § 1988 and other applicable laws; and

G.      Grant such other and further relief as the Court deems just and proper.

Dated: May 18, 2022
      New York, New York

                                    Respectfully submitted,

                                    HOLWELL SHUSTER & GOLDBERG LLP

                                    By /s/ *Gregory Dubinsky*
                                    Gregory Dubinsky
                                    James M. McGuire
                                    Brian T. Goldman
                                    Jan Jorritsma (*pro hac vice* forthcoming)
                                    Daniel K. Phillips (*pro hac vice* forthcoming)

                                    425 Lexington Avenue
                                    New York, NY 10017
                                    (646) 837-5151
                                    gdubinsky@hsgllp.com

                                    *Attorneys for Plaintiffs*