UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LEAGUE OF WOMEN VOTERS OF NEW YORK STATE,
PETRA GOPFERT, and LOULISE ERKSINE,

*Plaintiffs*,

v.

PETER S. KOSINSKI, in his official capacity as Co-Chair of
the State Board of Elections; DOUGLAS A. KELLNER, in
his official capacity as Co-Chair of the State Board of
Elections; ANDREW J. SPANO, in his official capacity as
Commissioner of the State Board of Elections; ANTHONY J.
CASALE, in his official capacity as Commissioner of the
State Board of Elections; TODD D. VALENTINE, in his
official capacity as Co-Executive Director of the State Board
of Elections; and KRISTEN ZEBROWSKI STAVISKY, in
her official capacity as Co-Executive Director of the State
Board of Elections,

*Defendants*.

**CIVIL ACTION NO. 1:22-cv-4084**

---

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Holwell Shuster & Goldberg LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151

*Counsel for Plaintiffs*

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 5

I.     The New York State Legislature Violates the State Constitution by Imposing Impermissibly Gerrymandered Districts Through a Defective Process ............................ 5

        A.     The Redistricting Process Mandated by the State Constitution ............................. 5

        B.     The Legislature Unlawfully Seizes Power After the IRC Fails to Submit a Second Set of Maps ........................................................................................ 6

II.    The New York Court of Appeals Holds that the Legislature's Maps Are Unconstitutional ............................................................................................................. 7

III.   Defendants Improperly Certify the Ballot for the June 28, 2022 Statewide-Office Primaries ......................................................................................................................... 9

IV.   The Steuben Court's "Advisory Opinion" ...................................................................... 10

ARGUMENT .................................................................................................................. 11

I.     Plaintiffs Are Likely to Succeed on the Merits of Their Claims ..................................... 12

        A.     Plaintiffs All Have Standing to Bring This Action ............................................... 13

        B.     New York Voters' Constitutional Rights Are Violated by Defendants' Exclusion from the Primary Ballot for Statewide Offices of Would-Be Qualifying Candidates ............................................................................................ 15

        C.     Defendants' Actions Impose a Severe Burden .................................................... 16

        D.     There Is No Justification for the Electoral Process Defendants Are Implementing, Let Alone a Compelling One .............................................................. 23

        E.     Even if the Court Concludes the Burden Is Less Severe, the Law Is Unconstitutional ................................................................................................ 26

II.    The Harms Caused by Defendants' Continuing Constitutional Violations Are Irreparable ..................................................................................................................... 27

III.   The Balance of Equities and the Public Interest Weigh Heavily in Favor of Preliminary Relief .......................................................................................................... 28

CONCLUSION ............................................................................................................... 32

# TABLE OF AUTHORITIES

**Cases**                                       **Page(s)**

*Am. Party of Texas v. White*,
    415 U.S. 767 (1974) ........................................................................................... 23

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983) ..................................................................................... *passim*

*Buckley v. Am. Const. L. Found.*, Inc.,
    525 U.S. 182 (1999) ........................................................................................... 25

*Burdick v. Takushi*,
    504 U.S. 428 (1992) .......................................................................... 15, 21, 22, 24

*Cal. Democratic Party v. Jones*,
    530 U.S. 567 (2000) ..................................................................................... 16, 25

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010) ................................................................................ 11

*De Guademar v. Kosinski*,
    22-cv-3534 (S.D.N.Y. May 3, 2022) .................................................................. 25

*Elrod v. Burns*,
    427 U.S. 347 (1976) ........................................................................................... 27

*Gallagher v. N.Y. State Bd. of Elections*,
    477 F. Supp. 3d 19 (S.D.N.Y. 2020) ................................................................. 27

*Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    16 F.4th 67 (2d Cir. 2021) ........................................................................... 11, 27

*Green Party of N.Y. State v. N.Y. State Bd. of Elections*,
    389 F.3d 411 (2d Cir. 2004) .............................................................................. 27

*Harkenrider v. Hochul* ("*Harkenrider III*"),
    2022 WL 1236822 (N.Y. April 27, 2022) .................................................. 5, 6, 30

*Harkenrider v. Hochul*,
    2022 WL 1236822 (N.Y. Apr. 27, 2022) .............................................................. 2

*Harkenrider v. Hochul*,
    No. 22-00506, 2022 WL 1193180 (4th Dep't Apr. 21, 2022) ("*Harkenrider II*"). ................... 7

*Johnson v. Miles,*
355 F. App'x 444 (2d Cir. 2009) ................................................................ 27

*Jolly v. Coughlin,*
76 F.3d 468 (2d Cir. 1996) ....................................................................... 27

*Kusper v. Pontikes,*
414 U.S. 51 (1973) .................................................................................. 16

*LaRouche v. Kezer*,
990 F.2d 36 (2d Cir. 1993) ....................................................................... 17

*Lerman v. Board of Elections in City of New York*,
232 F.3d 135 (2d Cir. 2000) ........................................................... 14, 23, 24

*Libertarian Party of Connecticut v. Lamont*,
977 F.3d 173 (2d Cir. 2020) ..................................................................... 20

*Libertarian Party of Kentucky v. Grimes*,
835 F.3d 570 (6th Cir. 2016) .................................................................... 16

*Libertarian Party of New York v. N.Y. Bd. of Elections*,
539 F. Supp. 3d 310 (S.D.N.Y. 2021) .................................................. 16, 22

*Lubin v. Panish,*
415 U.S. 709 (1974) ......................................................................... 19, 20, 21

*Lucas v. Townsend,*
486 U.S. 1301 (1988) ........................................................................... 30, 31

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ................................................................................. 15

*Maslow v. Bd. Of Elections in City of New York*,
2008 WL 2185370 (E.D.N.Y. May 23, 2008) ............................................ 14

*McCarthy v. Briscoe,*
429 U.S. 1317 (1976) ............................................................................... 31

*Merrill v. Milligan,*
142 S. Ct. 879 (2022) ............................................................................... 30

*Molinari v. Powers*,
82 F. Supp. 2d 57 (E.D.N.Y. 2000) ........................................................... 19

*Munro v. Socialist Workers Party*
479 U.S. 189 ................................................................................................. 19

*N.Y. Progress & Prot. PAC v. Walsh,*
733 F.3d 483 (2d Cir. 2013) ......................................................................... 28

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.,*
710 F.3d 71 (2d Cir. 2013) ........................................................................... 13

*New York v. Brehm,*
432 F. Supp. 3d 285 (S.D.N.Y. 2020) .......................................................... 24

*Nichols v. Hochul,*
No. 154213/2022 (Sup. Ct. N.Y. Cty. May 15, 2022) ...................................... 9

*Price v. N.Y. State Bd. of Elections,*
540 F.3d 101 (2d Cir. 2008) ......................................................................... 13

*Price v. N.Y. State Bd. of Elections,*
540 F.3d 101 (2d Cir. 2008) ......................................................................... 25

*Purcell v. Gonzalez,*
549 U.S. 1 (2006) ......................................................................................... 30

*Republican Nat'l Comm. v. Democratic Nat'l Comm.,*
140 S. Ct. 1205 (2020) ................................................................................. 30

*Rockefeller v. Powers,*
74 F.3d 1367 (2d Cir. 1995) ......................................................................... 15

*Schulz v. Williams,*
44 F.3d 48 (2d Cir. 1994) ............................................................................. 16

*Singleton v. Merrill,*
2022 WL 265001 (N.D. Ala. Jan. 24, 2022) .................................................. 31

*Stone v. Bd. of Election Comm'rs,*
750 F.3d 678 (7th Cir. 2014)) ...................................................................... 20

*Summers v. Earth Island Inst.,*
555 U.S. 488 (2009) ..................................................................................... 13

*Tashjian v. Republican Party of Connecticut,*
479 U.S. 208 (1986) ............................................................................... 25, 27

*Timmons v. Twin Cities Area New Party*,
520 U.S. 351 .......................................................................................... 26

*United States v. State of New York*,
   2012 WL 254263 (N.D.N.Y. Jan. 27, 2012)...................................... 29

*Williams v. Rhodes*,
   393 U.S. 23 (1968)......................................................... 4, 14, 16

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)) ........................................................................ 27

*Yang v. Kellner*,
   458 F. Supp. 3d 199 (S.D.N.Y. 2020) ........................................... 13

*Yang v. Kosinski*,
   960 F.3d 119 (2d Cir. 2020) ................................................... 16, 27

**Constitutional Provisions**

N.Y. Const. art. III, § 4 ......................................................................... 6

**Statutes**

N.Y. Election Law § 8-100 ................................................................. 28

N.Y. Election Law § 4-110 ................................................................. 26

N.Y. Election Law § 6-134. ................................................................ 10

N.Y. Election Law § 6-136 ......................................................... *passim*

N.Y. Election Law § 6-138. .......................................................... 21, 29

N.Y. Election Law § 6-142 ................................................................. 21

N.Y. Election Law § 6-158. ................................................................ 10

N.Y. Legis. Law § 93 ........................................................................... 6

**Other Authorities**

Law News of N.Y. Ch. 5 (A. 779) ................................................................................. 28

Luke Parsnow & Kate Lisa, *Special Master Releases New Draft New York Congressional Maps*,
    Spectrum News, May 16, 2022 ............................................................................... 20

## PRELIMINARY STATEMENT

Plaintiffs the League of Women Voters of New York State (the "League")—an association whose purpose is to promote free and fair elections in New York and whose members are New York voters—and two voters bring this action to remedy Defendants' constitutionally infirm exclusion of candidates from the June 28, 2022 primary ballot for New York statewide offices and imposition of onerous requirements for independent statewide candidates in the general election.[1] The 2022 election process in New York has gone off the rails, and the result is the severe impingement of the federal constitutional rights of voters and candidates. Defendants—ostensibly tasked with ensuring fair elections in New York State—have demonstrated little interest in putting it back on track, necessitating this suit.

Because of Defendants' actions, the primary ballots for statewide offices and the general election ballot in November will exclude candidates from the ballot in violation of the Constitution. Following the New York Court of Appeals' invalidation, on state constitutional grounds, of the Legislature's congressional and State Senate maps, New York's primary election has been divided between two dates, one in June—the ballot for which Defendants have already unlawfully certified—and one for U.S. Congress and State Senate in August. Meanwhile, independent candidates for statewide offices are unduly burdened by time-crunched signature-gathering periods.

This Court must act to protect New York voters' constitutional rights. First, the primary for statewide offices must be moved to August 23 (the date of the primary for Congress and State Senate). Second, there must be an extension of the period to obtain signatures and file designating petitions to be on the primary ballot for additional would-be candidates for statewide

---

[1] The statewide offices are Governor, Lieutenant Governor, Attorney General, and Comptroller.

offices, and all primary candidates for statewide offices (aside from those designated by the party) must be required to submit new designating petitions pursuant to state law. Third, independents must be allowed a reasonable period to obtain signatures to qualify for the general election ballot.

Defendants and the Legislature are responsible for the untenable situation in which New York voters find themselves. On April 27, 2022, the Court of Appeals ruled that the maps enacted by the Legislature for congressional, State Senate, and Assembly seats violated the State Constitution. *Harkenrider v. Hochul*, 2022 WL 1236822 (N.Y. Apr. 27, 2022). Specifically, the Court held that the maps were enacted in violation of the mandatory map-drawing procedure the State Constitution requires to reduce the possibility of partisan gerrymandering. In addition, the Court held that the congressional maps were an unlawful partisan gerrymander. It therefore voided the challenged maps—that is, *only* the maps for Congress and State Senate, due to a procedural quirk. Of necessity, the primaries for Congress and State Senate were subsequently moved from June 28 to August 23, 2022. The state court superintending the redistricting process has stated that new congressional and State Senate maps will be finally promulgated on May 20, 2022.

Lamentably, on May 4, just days after the Court of Appeals' decision, Defendants *certified the ballots* for the June 28 primary for statewide offices—even though access to the statewide primary ballot requires gathering signatures from one-half of the congressional districts of the State, and the congressional maps at the time of certification had been struck down as unconstitutional. Defendants' blatantly unlawful certification of the ballot prior to the promulgation of new, valid maps deprived would-be additional candidates of ballot access.

Defendants' refusal to remedy the problems created by their own lawlessness has caused and will cause serious constitutional harms.

*First*, the certification of the June 28, 2022 primary ballot for statewide offices has unlawfully excluded candidates who might otherwise have run given new and valid congressional maps. Under New York law, statewide-office candidates may appear on the primary ballot upon obtaining requisite signatures for designating petitions "in each of one-half of the congressional districts of the state." N.Y. Election Law § 6-136(1). But given the Court of Appeals' April 27 ruling that the previous set of congressional maps were unconstitutional, there are no valid congressional maps. As a result, the certified primary ballot lists candidates *none* of whom filed designating petitions based, as the law requires, on the congressional maps that will be in place at the time of the November 2022 general elections. Moreover, by unlawfully certifying the statewide primary ballots, Defendants excluded all would-be candidates who would seek to obtain signatures and submit qualifying designating petitions in light of constitutionally valid electoral maps. The ballot certification therefore gravely burdens the constitutional rights of voters who wish to support and vote for such excluded candidates.

*Second*, Defendants are set to implement a burdensome and discriminatory process for independent statewide candidates. As a direct result of Defendants' lawless certification, the state court superintending the congressional and state senate redistricting process issued a self-styled "advisory opinion." That opinion states that *independent* statewide candidates seeking to be on the general-election ballot must seek signatures under the forthcoming congressional maps and consigns them to an unlawfully compressed timeframe for gathering signatures, a timeframe that makes obtaining the requisite number of signatures, as a practical matter, impossible. Therefore, not only are would-be candidates entirely excluded from the primary ballot for statewide offices,

but if they do wish to stand for the general election they may only do so as independents subject to onerous signature-gathering requirements that they will all but certainly be unable to meet.

The statewide candidates who are already on the certified ballot through the petition process are therefore thrice-blessed by Defendants' unconstitutional efforts. Those candidates (i) remain on the certified ballots even though their candidacies are supported by signatures from unlawful and struck-down congressional districts; (ii) are immune from competition for voters from members of their party who have not been certified and otherwise would run for the same office; and (iii) are protected from independent candidates who must gather a sufficient number of signatures—if they somehow can—from the to-be-issued *lawful* congressional districts under an impossibly compressed time period. Defendants implemented this unlawful and discriminatory regime, apparently with the support of the leaders of both major political parties, against the interests and wishes of New York voters. In short, they have put into place a deliberately exclusionary electoral regime that makes a travesty of the democratic process.

The Court can and should intervene to remedy this arbitrary, unfair, and discriminatory electoral process for 2022. "The exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens. *Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983) (quoting *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968)). Because the current process will severely prejudice the constitutional rights of New York voters, Plaintiffs ask this Court for preliminary injunctive relief directing Defendants to (1) permit additional reasonable time for the certification of additional candidates on the primary ballot for statewide offices after lawful congressional maps are enacted; (2) postpone the June 28, 2022 primary elections for statewide offices to August 23, 2022 (the same day as the

congressional and State Senate primaries) to effectuate the certification of additional candidates; (3) require all candidates for statewide offices (aside from those designated by the party)— including those listed on the certified primary ballot—to submit new designating petitions pursuant to state law to appear on the primary ballot; and (4) extend the unlawfully shortened time period for gathering signatures for independent nominating petitions for statewide offices.

The standard for that relief is met here. Plaintiffs are likely to prevail on the merits of their claims. They have suffered and will continue to suffer irreparable harm in the absence of granting that relief. And the public interest clearly favors granting the relief requested: the integrity and constitutionality under the First and Fourteenth Amendments of New York's elections are at stake.

**BACKGROUND**[2]

I.      **The New York State Legislature Violates the State Constitution by Imposing Impermissibly Gerrymandered Districts Through a Defective Process**

This action follows the recent decision of the New York Court of Appeals striking down electoral maps created by the Legislature in violation of the New York constitution.

A.      **The Redistricting Process Mandated by the State Constitution**

In 2014, the citizens of New York amended the state constitution to prevent the perversion of democracy that partisan gerrymandering entails and to guarantee competitive elections. The amendments and implementing statutes created an independent redistricting commission (the "IRC") and an "exclusive method of redistricting" congressional, State Senate,

---

[2] The facts relevant to this action are detailed in the Complaint and in the accompanying affidavits of Kate Doran, Nancy Rosenthal, Loulise Erskine, and Petra Gopfert. Plaintiffs set forth below those facts most relevant to the disposition of this motion.

and State Assembly districts. *Harkenrider v. Hochul* ("*Harkenrider III*"), 2022 WL 1236822, at *2, *5, *8 (N.Y. April 27, 2022); N.Y. Const. art. III, § 4(b).

Under that mandatory process, the IRC crafts new maps after dialogue with the public that it ultimately proposes to the Legislature. *Id*. at *7. The IRC submits its maps to the Legislature by January 15 of the second year following the Census. *Harkenrider III*, 2022 WL 1236822, at *5 (citing N.Y. Const. art. III, § 4(b)). If the Legislature or Governor rejects those maps, the IRC must revise them and propose a second set of maps to the Legislature within 15 days, but in no case later than February 28. *Id.* The Legislature is then required to consider that second set of maps. The Legislature must assess the IRC maps with an "up or down" vote, that is, without making modifications. N.Y. Const. art. III, § 4(b); N.Y. Legis. Law § 93(1); *see Harkenrider III*, 2022 WL 1236822, at *2.

*Only* if the Legislature rejects the second set of proposed maps in the prescribed fashion does the state constitution permit it to amend the maps and enact its own district maps. N.Y. Const. art. III, § 4(b); N.Y. Legis. Law § 93(1); *see also Harkenrider III*, 2022 WL 1236822, at *2. Should the IRC fail to propose a second set of maps, the only alternative to the constitutional process is "court intervention following a violation of the law." *Harkenrider III*, 2022 WL 1236822, at *8, *12.

## B.    The Legislature Unlawfully Seizes Power After the IRC Fails to Submit a Second Set of Maps

As required by the state constitution, the IRC held public meetings across New York throughout 2021 to hear public testimony about draft maps and the redistricting process, N.Y. Const. art. III, § 4(c). After the comment period ended, the Democratic members and the Republican members of the IRC were unable to agree on a set of maps to send to the legislature; each partisan faction submitted proposed maps to the Legislature. *Harkenrider III*, 2022 WL

1236822, at *2. The Legislature voted down these competing proposals and notified the IRC of its decisions on January 10, 2022. *Id.*

Rather than submit a new set of maps, the IRC informed the Legislature that it remained deadlocked, and the January 25 deadline set by the New York constitution came and went. *Id.* The Democrat-controlled Legislature drafted its own maps without public input or input from the Republican members of the Legislature and enacted these maps on a party-line vote; Governor Hochul signed the maps into law on February 3, 2022. *Id.* These maps determined district boundaries for the U.S. Congress, State Senate, and State Assembly. *Id.*

## II.     The New York Court of Appeals Holds That the Legislature's Maps Are Unconstitutional

New York citizens brought suit in the Steuben County Supreme Court (the "Steuben Court") to challenge the Legislature's congressional and—after amending their petition—State Senate maps following their adoption. *See generally Harkenrider v. Hochul*, No. E2022-0116CV (N.Y. Sup. Ct. Steuben Cty.) ("*Harkenrider I*")).[3]

After a bench trial, the Steuben Court voided the congressional and State Senate maps as unlawfully partisan and voided the congressional, State Senate, and Assembly maps for being promulgated according to an unconstitutional process. On appeal, the New York Appellate Division vacated the Steuben Court's holding that the Senate and Assembly maps were procedurally defective and void but affirmed the Steuben Court's ruling that the congressional maps were an unlawful partisan gerrymander. *Harkenrider v. Hochul*, No. 22-00506, 2022 WL 1193180, at *3 (4th Dep't Apr. 21, 2022) ("*Harkenrider II*").

---

[3] All exhibits to this motion are attached to the Affirmation of Brian T. Goldman, filed herewith.

Less than a week later, the Court of Appeals reversed the Appellate Division and reinstated the decision of the Steuben Court, agreeing with that court that "the legislature and the IRC deviated from the constitutionally mandated procedure" and so the congressional, Senate, and Assembly maps were all defective. *Harkenrider III*, 2022 WL 1236822, at *5. "[T]here can be no question," the Court of Appeals stated, "that the drafters of the 2014 constitutional amendments and the voters of this state intended compliance with the IRC process to be a constitutionally required precondition to the legislature's enactment of redistricting legislation." *Id*. at *9. Indeed, "no one disputes" that the IRC and Legislature had "failed to follow the procedure commanded by the State Constitution." *Id*. at *1.

The Court of Appeals thereafter remitted the case to the Steuben Court and noted that "it will likely be necessary to move the congressional and senate primary elections to August" and expressed its "confiden[ce] that, in consultation with the Board of Elections, Supreme Court can swiftly develop a schedule to facilitate an August primary election, allowing time for the adoption of new constitutional maps, the dissemination of correct information to voters, the completion of the petitioning process, and compliance with federal voting laws." *Id.* at *12.

Following the Court of Appeals' decision, and given the need to craft new maps, the Steuben Court postponed the primaries for congressional and State Senate elections from June 28 to August 23, 2022. *See* Ex. B.[4] The June 28 primary date for statewide offices and the Assembly was not challenged by plaintiffs in that action and was left undisturbed.

---

[4] Though the Court of Appeals ruled that the map for the Assembly was unconstitutional, the court could not invalidate the Assembly maps because "petitioners neither sought invalidation of the 2022 state assembly redistricting legislation in their pleadings nor challenge in this Court the Appellate Division's vacatur of the relief granted by Supreme Court with respect to that map." *Harkenrider III*, 2022 WL 1236822, at *11 n.15. The Assembly primary is currently scheduled for June 28, 2022, subject to at least one pending challenge brought in state court necessitated by

**III.**     **Defendants Improperly Certify the Ballot for the June 28, 2022 Statewide-Office Primaries**

As a result of the Legislature's misadventure, New York was left without a valid map for congressional districts as of the Court of Appeals' decision on April 27, 2022. The lack of a congressional map has enormous ramifications for elections for statewide offices: Candidates for statewide offices seeking to run on a party line must submit "designating petitions" to appear on the primary ballot. N.Y. Election Law § 6-136(1). Only the political parties' handpicked candidates are exempt from this designating petition requirement. N.Y. Election Law § 6-104 ("Party designation of a candidate for nomination for any office to be filled by the voters of the entire state shall be made by the state committee."). Independent candidates seeking to run in the general elections must also submit petitions—"independent nominating petitions." *Id.* § 6-142(1). Both kinds of petitions require candidates to collect signatures from a certain number of congressional districts. *See id.*; *see also id.* § 6-136(1). But the congressional districts previously in place for the petitioning process have been voided.

Notwithstanding the absence of valid congressional districts and the constitutional invalidity of the assembly maps, Defendants—acting in their capacity as officers of the New York State Board of Elections ("NY BOE")—certified the ballot for the June 28 primary for statewide (and Assembly) races on May 4, 2022. *See* Ex. A (N.Y. State Bd. of Elections, Certified Primary Ballot (May 4, 2022)). The effect of certification is to finalize the primary ballot with the names of purportedly eligible candidates, the title of the office sought by the candidates, the party affiliation of the candidates, and the order in which candidates' names will be printed. N.Y. Election Law § 4-110. This certification means that no additional candidates

---

the *Harkenrider* petitioners' failure to ask that those maps be invalidated. *See Nichols v. Hochul*, No. 154213/2022 (Sup. Ct. N.Y. Cty. May 15, 2022).

may be added to the primary ballot and therefore excludes further candidates from running on a party line in the general election. As is obvious, excluding candidates from the opportunity to appear on the primary ballot both deprives the voters of the opportunity to support and vote for them and deprives candidates and their supporters in the general election of the benefits that accompany party affiliation, such as voter recognition of the candidate's political views and stance on many significant issues.

Pursuant to the Election Law, certification must occur "not later than fifty-five days before a primary election." *Id.* Were the Court to grant the instant motion and order the postponement of the primary for statewide until August 23, the state-law deadline for certification would be pushed to June 29. *See* N.Y. Election Law § 4-110 (primary ballots must be certified fifty-five days prior to election). Such postponement would provide statewide candidates with the time necessary to obtain signatures from residents of valid congressional districts following the Steuben Court's issuance of the maps for the districts on May 20. An extension of the time to collect signatures until June 20 (which would give the Board of Elections over a week to certify the primary ballots) would more closely align the political calendar with current New York law, which allows candidates approximately six weeks—from March 1 to April 11 (for the 2022 races)—to gather signatures. N.Y. Election Law §§ 6-134, 6-158.

## IV.    The Steuben Court's "Advisory Opinion"

On May 5, 2022, the Steuben Court *sua sponte* issued a self-styled "advisory opinion." Ex. C. In the opinion, the court explained that it "has learned from ongoing conversations with the Board of Elections"—a party to the litigation—that "there is some confusion which has developed with regard to the time frames for gathering signatures for Independent Nominating Petitions" because "[s]ome statewide elections require signatures from a variet[y] of

congressional districts." *Id.* at 1. "The question has come up as to what persons seeking statewide offices should do with regard to gathering signatures since there currently are no Congressional Districts." *Id.* The Steuben Court explained it "expects to have the new Congressional maps finalized and published by May 20, 2022." *Id.*

Addressing only the question of independents seeking statewide offices, the Steuben Court stated that it "does not intend to alter the time frame for gathering signatures for Independent Nominating Petitions for statewide elections." *Id.* at 2. Despite noting that "a potential candidate does not currently know the boundaries for various Congressional Districts," the Steuben Court advised that "the candidate should still be gathering signatures," because "[t]he time period for gathering said signatures began in mid-April." *Id.* at 2. The signatures gathered by a candidate—which, again, must be from some portion of the now-nonexistent congressional districts—must then be assessed "to make sure [the candidate] has the appropriate number of signatures from the appropriate number of different districts." *Id.* at 2. The court stated that the petitions must be filed between May 24 and May 31, 2022. *Id.* at 1–2. The Advisory Opinion made no mention of party-affiliated candidates for statewide offices.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 78 (2d Cir. 2021) (quotation marks omitted). Moreover, a district court may "grant a preliminary injunction . . . where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of

the underlying claims, but where the costs outweigh the benefits of not granting the injunction."

*Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

Plaintiffs satisfy the standard for a preliminary injunction. Voters are undoubtedly burdened by Defendants' unlawful exclusion of candidates from petitioning to appear on the primary and general election ballots. *Anderson*, 460 U.S. at 787–88 & n.7. Further, under binding Second Circuit caselaw, irreparable harm is necessarily present where, as here, there are allegations of violations of constitutional rights, particularly under the First Amendment. Finally, the equities and public interest cut sharply in Plaintiffs' favor.

**I.    Plaintiffs Are Likely to Succeed on the Merits of Their Claims**

The current process superintended by Defendants has resulted and will continue to result in the deprivation of New York voters' constitutional rights in multiple ways.

*First*, Defendants have excluded from the primary ballot would-be candidates for statewide office who could otherwise qualify under state law pursuant to forthcoming valid congressional maps. *See* Compl., Count I.[5] Voters who would support such candidates in the party primary are shut out—even as Defendants certified ballots that include candidates who did *not* comply with state law. Thus, the associational and other harms caused by the exclusion are compounded by Defendants' discriminatory inclusion of the unlawfully certified candidates.

*Second*, Defendants certified a primary ballot for statewide office races based upon congressional maps that have been voided as unconstitutional. *See* Compl., Count I. This taints the electoral process and deprives voters of a lawful ballot.

---

[5] "Compl." refers to the Complaint filed in this case.

*Third*, would-be independent candidates are also severely burdened in their ability to qualify for the primary ballot, because the time period to gather signatures has been sharply compressed, and their supporters must gather signatures under a system that requires signatures from geographically diverse congressional districts that do not currently exist. *See* Compl., Count II.

The Constitution spurns such a result. Voters are entitled to a reasonable, nondiscriminatory process for their preferred candidates to seek access to the ballot—precisely the opposite of what Defendants have implemented.

### A. Plaintiffs All Have Standing to Bring This Action

Plaintiffs undoubtedly have standing to bring the instant suit.[6] *First*, the League of Women Voters of New York State has standing. "It is common ground that . . . organizations can assert the standing of their members." *Summers v. Earth Island Inst.*, 555 U.S. 488, 494 (2009); *see Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013), *as amended* (Mar. 21, 2013) ("A membership organization . . . may assert the standing of its members if, among other requirements not at issue here, it establishes that at least one of its members has standing to sue individually.").

Here, the League's members are New York voters, some of whom wish to support candidates that have been excluded from the primary ballot for statewide offices, and others of whom seek to designate independent candidates for the statewide races. *See* Aff. of Nancy

---

[6] Of course, Defendants are the proper defendants for this suit pursuant to 42 U.S.C. § 1983. *See Yang v. Kellner*, 458 F. Supp. 3d 199, 218 (S.D.N.Y. 2020) (granting preliminary injunction ordering "Kellner, Spano, Kosinski, Valentine, and Brehm, in their official capacities, . . . to reinstate to the Democratic primary ballot those presidential and delegate candidates who were duly qualified as of April 26, 2020, and to hold the primary election on June 23, 2020."), *aff'd sub nom. Yang v. Kosinski*, 805 F. App'x 63 (2d Cir. 2020), and *aff'd sub nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020).

Rosenthal; Aff. of Katherine Doran. And it is settled that "the associational rights of candidates and voters are generally similarly burdened by election laws." *Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 108 (2d Cir. 2008); *see Anderson*, 460 U.S. at 787–88 ("The exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens.") (quoting *Rhodes*, 393 U.S. at 30–31).

There is no doubt, therefore, that League members' deprivation of the constitutionally safeguarded right to support and vote for candidates they would prefer in the primary for statewide offices, or as independents in the general election, suffices to confer standing here. *See Maslow v. Bd. of Elections in City of New York*, 2008 WL 2185370, at *4 (E.D.N.Y. May 23, 2008) ("[A] restriction that is alleged to cause injury-in-fact to a plaintiff's rights to engage in interactive political speech and expressive political association is sufficient to confer standing under Article III."), *aff'd*, 658 F.3d 291 (2d Cir. 2011). Indeed, in *Lerman v. Board of Elections in City of New York*, the Second Circuit found standing where an individual "ha[d] associated with [a candidate] to promote his political candidacy and help him gain access to the primary election ballot" but "assert[ed] injury in having been deprived of the opportunity to gather signatures in behalf of his candidacy." 232 F.3d 135, 142 (2d Cir. 2000). The situation is the same here.

*Finally*, there is no doubt that the individual Plaintiffs in this action, Ms. Gopfert and Ms. Erskine, have standing. *See* Aff. of Petra Gopfert; Aff. of Loulise Erskine. Each has a stated interest in supporting a particular candidate in the Democratic gubernatorial primaries, respectively, and via independent nominating petition if necessary. *See* Gopfert Aff. ¶12 ("I wish to sign and support a petition to add Andrew Cuomo to the Democratic Party primary ballot for

Governor."), ¶¶19-20; Erskine Aff. ¶12 ("I wish to sign and support a petition to add Paul Nichols to the Democratic Party primary ballot for Governor."), ¶¶20-21.[7] But they cannot proceed with either. Thus, the individual plaintiffs have suffered "an invasion of a legally protected interest which is . . . concrete and particularized," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), because they have been deprived the opportunity to sign and support a designating petition in favor of their chosen candidate according to the procedure and during the statutory period set out in N.Y. Election Law § 6-136. *See Rockefeller v. Powers*, 74 F.3d 1367, 1376 (2d Cir. 1995) (individual voters had standing to challenge signature requirements for the Republican primary, where signature requirements resulted in fewer candidate options on the primary ballot).

**B.  New York Voters' Constitutional Rights Are Violated by Defendants' Exclusion from the Primary Ballot for Statewide Offices of Would-Be Qualifying Candidates**

"[T]he rigorousness of [a court's] inquiry into the propriety of a state election law depends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992). "[W]hen those rights are subjected to 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Id*. The burden placed on voters by New York's 2022 ballot

_____

[7] Paul Nichols has attested that he is "a candidate for Governor of the State of New York" who would "obtain new signatures and file a new designating petition . . . to qualify to appear on the primary ballot for Governor in the Democratic primary election" "if . . . the designating petition is reopened." Ex. F.

Andrew Cuomo is reportedly considering running for Governor. Brian Schwartz, *Ex-New York Gov. Andrew Cuomo Considers Running Against Kathy Hochul Despite Opposition From His Own Party*, CNBC, (Mar. 16, 2022), *available at* https://www.cnbc.com/2022/03/16/former-ny-gov-andrew-cuomo-considers-running-against-kathy-hochul-despite-opposition-from-party.html.

access restrictions is a severe one. The justifications for this state of affairs are nonexistent; at a minimum, they are nowhere near compelling enough to satisfy strict scrutiny.

### C.    Defendants' Actions Impose a Severe Burden

"To determine whether a challenged provision places a 'severe burden' on a plaintiff's First and Fourteenth Amendment rights, courts in this Circuit are instructed to 'consider the alleged burden imposed by the challenged provision in light of the state's overall election scheme.'" *Libertarian Party of New York v. N.Y. Bd. of Elections*, 539 F. Supp. 3d 310, 321 (S.D.N.Y. 2021) (quoting *Schulz v. Williams*, 44 F.3d 48, 56 (2d Cir. 1994)).

"Under our political system, a basic function of a political party is to select the candidates for public office to be offered to the voters at general elections. A prime objective of most voters in associating themselves with a particular party must surely be to gain a voice in that selection process." *Kusper v. Pontikes*, 414 U.S. 51, 58 (1973). Thus, as is critical here, "[t]he exclusion of candidates also burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying-point for like-minded citizens." *Anderson*, 460 U.S. at 787–88 (quoting *Rhodes*, 393 U.S. at 30-31); *see, e.g.*, *Yang v. Kosinski*, 960 F.3d 119, 130 (2d Cir. 2020) ("[T]hey wish to appear on the ballot of New York's Democratic presidential primary and they wish to vote in the primary election. That interest 'to engage in association for the advancement of beliefs and ideas' and 'to cast their votes effectively' falls squarely within the ambit of the protection afforded by the First Amendment."). Indeed, the Supreme Court's "cases vigorously affirm the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party select[s] a standard bearer who best represents the party's ideologies and preferences." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 575 (2000).

Most critically for this case, "*the hallmark of a severe burden is exclusion or virtual exclusion from the ballot.*" *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020) (quoting *Libertarian Party of Kentucky v. Grimes*, 835 F.3d 570, 574 (6th Cir. 2016) (emphasis added). This is longstanding law in this Circuit; "[o]f course" if "state regulations severely burden a candidate's access to the ballot" the "regulation must be narrowly drawn to advance a state interest of compelling importance." *LaRouche v. Kezer*, 990 F.2d 36, 40 (2d Cir. 1993) (quotation marks omitted).

Here, the exclusion of candidates from the ballot, occasioned by Defendants' unlawful and unconstitutional electoral process and the Legislature's power-grab, constitutes precisely the type of "severe burden" that courts enjoin. The process Defendants superintend indisputably burdens the rights to associate and cast an effective vote held by the League's members and the individual Plaintiffs—those New York voters who seek a lawful and fair playing field in the primaries for state elections, and in the general election for independents. This exclusion is compounded by the fact that Defendants' certification was decidedly *not* "generally-applicable and evenhanded," *Anderson*, 560 U.S. at 789 n.9; the state-law requirement of signatures from half of the congressional districts was, in practical effect, waived for the certified candidates in the midst of the electoral cycle. *Cf. Poindexter v. Strach*, 324 F. Supp. 3d 625, 632 (E.D.N.C. 2018) ("Defendant has not provided, nor is the court aware, of any legislation that has been found constitutionally sound when enacted *during an election cycle* that disqualifies previously qualifying candidates from appearing on a ballot.") (emphasis in original).

***Exclusion of Candidates from Major-Party Primary Ballots***. To be placed on the primary ballot for statewide office, New York Election Law requires that a candidate obtain signatures from voters residing in half of the State's congressional districts. *See* N.Y. Election

Law § 6-136 ("Petitions for any office to be filled by voters of the entire state must" have signatures from voters who "shall reside in each of one-half of the congressional districts of the state."). As of the Court of Appeals' April 27 decision, there are no lawfully existing congressional maps in New York. Notwithstanding that fundamental legal infirmity, Defendants have already certified the primary ballot for statewide offices—listing candidates who necessarily could not have met the dictates of Election Law § 6-136 and excluding all would-be candidates who could seek to qualify by obtaining signatures under the forthcoming valid congressional maps.

The affidavits submitted with this motion illustrate the constitutional harm caused by this arbitrary and discriminatory state of affairs. Consider the affidavits of Katherine Doran, Loulise Erskine, and Petra Gopfert. These registered Democratic voters wish to sign designating petitions for candidates whose views align more closely with their own to appear on the Democratic primary ballot for statewide races throughout New York.[8] Because of Defendants' certification of the primary ballot for statewide races, however, these voters cannot support any petitions to add candidates to the ballot. Gopfert Aff. ¶¶ 15-17; Erskine Aff. ¶¶14-17; Doran Aff. ¶¶ 15-18. They therefore cannot support their preferred candidate "as the standard-bearer for the Democratic party" in these races. Gopfert Aff. ¶18; Erskine Aff. ¶18; Doran Aff. ¶19.

---

[8] *See* Gopfert Aff. ¶¶ 10-13 ("[I]f I were allowed to, I would seek to sign a designating petition with respect to candidates for the Governor's race . . . . In particular, I wish to sign and support a petition to add Andrew Cuomo to the Democratic Party primary ballot for Governor."); Erskine Aff. ¶¶ 10-13 (same, for Paul Nichols), 17 (for Lieutenant Governor, Attorney General, and Comptroller, "I would seek to sign a designating petition to add an alternative candidate to the primary ballot."); Doran Aff. ¶¶ 12-13 ("I wish to have the ability to support and vote for other candidates beyond the candidates who are currently running in the Governor's and Lieutenant Governor's race. Thus, if I were allowed to, I would seek to sign a designating petition with respect to candidates for the Governor's and Lieutenant Governor's race[.]"), ¶ 18 (same, for Attorney General and Comptroller).

Thus, Defendants' May 4 certification of the statewide primary ballot for June 28—excluding all statewide office candidates who might seek to appear on the ballot given the new maps—is a clear constitutional violation under binding law. The certification renders it impossible for additional statewide candidates to appear on the primary ballot, burdening voters' core associational and related rights. *See Munro*, 479 U.S. at 199 (the Constitution requires that a reasonably diligent candidate retain means for seizing the "availability of political opportunity"); *Lubin v. Panish,* 415 U.S. 709, 716 (1974) ("The right of a party or an individual to a place on the ballot is entitled to protection and is intertwined with the rights of voters."). Voters have no opportunity to support their preferred candidates seeking to qualify for the primary ballot under valid congressional maps. *Molinari v. Powers*, 82 F. Supp. 2d 57, 73 (E.D.N.Y. 2000) (striking down law that "deprive[d] the voter . . . of the right to participate in the primary process by placing on the ballot candidates whom he or she supports").

This is no trifling or technical harm; Defendants' foreclosure of designating petitions under the new maps will cause serious harm to the political process and voters. The composition of congressional maps is necessarily at the center of a would-be candidate's strategy and decision-making about whether to run for statewide office. In this regard, there are many reasons why a potential candidate for statewide office might not have sought to run under the prior maps but would change her mind about running in light of the forthcoming congressional maps. The new maps may be more favorable for her in terms of gathering signatures, they may believe the political dynamic changed in the intervening period, and voters may themselves reevaluate their candidate preferences in light of the new maps and the ever-changing political state of play. *Cf., e.g.*, *Anderson*, 460 U.S. at 790 ("In election campaigns . . . the candidates and the issues simply do not remain static over time. Various candidates rise and fall in popularity; domestic and

international developments bring new issues to center stage and may affect voters' assessments of national problems. Such developments . . . may also create opportunities for new candidacies."). Indeed, a senior fellow at the New York Census and Redistricting Institute at New York Law School has explained that the congressional maps recently published for public comment by the Steuben Court are "more compact" and "seem to reflect more communities and counties kept in tact [*sic*]." Luke Parsnow & Kate Lisa, *Special Master Releases New Draft New York Congressional Maps*, Spectrum News (May 16, 2022).[9] All the same, the draft maps have changed the political dynamics in various areas. *Id.*

Notwithstanding the promulgation of valid congressional maps, a would-be statewide candidate has no opportunity to seek to qualify for the primary ballot. The loss of voters' ability to consider such candidates undoubtedly burdens their First Amendment rights to associate and cast effective votes. *Libertarian Party of Conn.*, 977 F.3d at 177–78 ("What is ultimately important is not the absolute or relative number of signatures required but whether a 'reasonably diligent candidate could be expected to be able to meet the requirements and gain a place on the ballot.'" (quoting *Stone v. Bd. of Election Comm'rs*, 750 F.3d 678, 682 (7th Cir. 2014)). Indeed, "[i]t is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues." *Lubin*, 415 U.S. at 716. Moreover, because under state law a voter may only validly sign a single designating petition for each statewide office, N.Y. Elec. L. § 6-134(3), Defendants' unlawful premature certification of the primary ballots and refusal to allow the process to begin anew with the promulgation of valid maps represents yet another burden on protected speech. The result here is that proponents of

---

[9] *Available at* https://spectrumlocalnews.com/nys/central-ny/politics/2022/05/16/special-master-releases-new-new-york-congressional-maps.

candidates, such as Ms. Gopfert and Ms. Erskine, are barred from gathering grassroots support for additional candidates because certain voters, by virtue of signing prior designating petitions based on unlawful maps, will not be able to sign a new designating petition. *Lerman*, 232 F.3d at 146 ("[T]he witness residence requirement severely burdens political speech by 'drastically reduc[ing] the number of persons … available to circulate petitions.'") (quoting *Buckley v. Am. Const. L. Found.*, Inc., 525 U.S. 182, 193 (1999)).

Heaping constitutional infirmity upon infirmity, Defendants' ballot-access exclusion is discriminatory. The primary ballots they certified for the statewide races list candidates who necessarily could not have qualified under Election Law 6-136(1), which requires signatures from voters residing in "each of one-half of the congressional districts of the state." No such valid districts existed when Defendants certified the primary ballots, so Defendants have implemented an electoral regime in which they have expressly waived state-law requirements for certain candidates. The Constitution does not tolerate such a rules-for-some-but-not-for-all approach. *Cf. Lubin*, 415 U.S. at 719 ("The point, of course, is that ballot access must be genuinely open to all, subject to reasonable requirements."). While it may be "eminently reasonable" to "limit[] the choice of candidates to whose who ***have*** complied with state election law requirements," *Burdick*, 504 U.S. at 440 n.10 (emphasis added), it is surely the height of constitutionally-untenable arbitrariness to, as here, limit the choice of candidates to those who ***have not*** complied with state election law requirements (and bar all those who could from attempting to). *Cf. Anderson*, 460 U.S. at 793 ("The inquiry is whether the challenged restriction unfairly or unnecessarily burdens the availability of political opportunity.") (quotation marks omitted).

***Effective Exclusion of Candidates from Appearing as Independents on General***

***Election Ballot***. Political independents seeking to appear on the statewide general election ballot also face effective exclusion. In this respect, consider the affidavit of Ms. Rosenthal, who is not registered with either party. She wishes to support a candidate seeking to appear on an independent line for Governor of New York and other state offices. Rosenthal Aff. ¶¶7-8. However, as the *ad hoc* electoral process in New York stands, any such candidate only has *11 days* to complete the signature-gathering process to appear on the ballot—whereas New York law otherwise allows for *six weeks*. N.Y. Election Law § 6-138(4). This is no small difference, as the Election Law requires that she obtain *45,000* signatures for each candidate. N.Y. Election Law § 6-142. Moreover, any independent candidates supported by Ms. Rosenthal and those like her must collect these signatures from voters who "shall reside in each of one-half of the congressional districts of the State," *see id.*—a requirement with which compliance before May 20 is a literal impossibility, given that no congressional districts exist. Rosenthal Aff. ¶ 10. Indeed, recognizing this problem implicitly, the Steuben Court has *lowered* the signature-quantity requirement for *other* offices by 15%, such as for petitions to be added to State Senate and congressional primary ballots, but has not done so for independent petitions. *See* Ex. D. Ms. Rosenthal is therefore virtually foreclosed from helping her preferred candidate to appear on the general election ballot in light of onerous signature requirements and the compressed timeframe allotted.

This effective exclusion is also an unconstitutional burden, for the same reasons as apply to the primary ballot for statewide offices. *See Anderson*, 460 U.S. at 792-94. Worse yet, the current process uniquely burdens the rights of independent voters in particular. In New York, "independent bodies are not provided with a guaranteed ballot 'berth'"—unlike their major-party

analogues—and therefore "*must* nominate candidates directly onto the general election ballot, by submitting independent nominating petitions." *Libertarian Party*, 539 F. Supp. 3d at 315. Thus, there is no guarantee that *any* independent candidates will appear on the general election ballot for statewide offices. The result of this untenably constrained process is serious constitutional harm. As the Supreme Court has instructed, "[a] burden that falls unequally on . . . independent candidates impinges, by its very nature, on associational choices protected by the First Amendment," because it "discriminates . . . against those *voters* whose political preferences lie outside the existing political parties." *Anderson*, 460 U.S. at 793–94 (emphasis added).

The current electoral process in New York does not "afford minority political parties a real and essentially equal opportunity for ballot qualification." *Am. Party of Texas v. White*, 415 U.S. 767, 788 (1974). This burden on independent voters warrants this Court's intervention.

> **D.** **There Is No Justification for the Electoral Process Defendants Are Implementing, Let Alone a Compelling One**

Defendants cannot possibly justify these severe burdens on core associational rights. Severe burdens can be justified only by action "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434. Here, there cannot be even a reasonable interest conceivably advanced by Defendants as to the total exclusion of candidates from the ballots before valid congressional maps are promulgated—let alone a compelling justification. Indeed, Defendants' plain derogation of state law requirements speaks for itself.

"[I]t is especially difficult for the State to justify a restriction that limits political participation by an identifiable political group whose members share a particular viewpoint, associational preference, or economic status." *Anderson*, 460 U.S. at 793. Defendants' premature certification of the primary ballot for statewide offices is one of these discriminatory and unjustifiable restrictions. The certification done without any valid congressional maps in place

favors certain statewide candidates—allowing them to appear on the primary ballot as would-be representatives of political parties without satisfying state-law requirements regarding signatures from congressional districts—while at the same time freezing out others who *could* and *would* meet the signature requirements under the new maps (that is, candidates who actually would comply with state law). Meanwhile, independent candidates are *forced* to resort to the new congressional maps in a practically impossible time period. *Cf. id*. at 801 (rejecting "desire to protect existing political parties from competition . . . generated by independent candidates").

This harms voters, such as Plaintiffs and the League voters referenced above, who wish to petition to add a candidate to their party's primary ballot. Consider *Lerman*. There, the Second Circuit invalidated a requirement that designating petitions be validated only by a notary public, a commissioner of deeds, or a registered voter of the same political party also resident in the petitioner's district. 232 F.3d at 151. The Circuit held the requirement implicated "core political speech" and was therefore subject to exacting scrutiny. *Id.* at 146. The court observed that, "[w]hile candidates who are well-financed or favored by their party's leadership" have certain built-in advantages, "many candidates—especially those challenging their party's leadership—do not," and that the law cannot countenance distinctions that promote the former at the expense of the latter. *Id*. at 147. The Second Circuit thus held that the connection between the local witness requirement and the State's proffered justification was insufficiently precise, in light of the effect the law had on candidates not "favored by their party's leadership." *Id*. This case is *a fortiori*—the restrictions on ballot access here are without any justification whatsoever.

Indeed, as against voters' and candidates' weighty interests, Defendants cannot offer any credible justification. The burden of conducting elections given new maps, or the expense associated with printing new ballots, certainly are not credible justifications, and the Court

should pay them no heed. "[T]he Second Circuit has made clear that states must do more than merely recite important interests to satisfy *Anderson-Burdick*." *Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 312 (S.D.N.Y. 2020). Instead, the justifications must be "strong state interests," and—critically—the challenged rules must be shown to "in fact advance those interests." *Id*. "[T]he fact that the defendants asserted interests are 'important in the abstract' does not necessarily mean that its chosen means of regulation will in fact advance those interests." *Lerman*, 232 F.3d at 149 (quotation marks omitted).

*First*, "imposition of primary election costs" is not a compelling state interest. *Id*. at 152; *see also Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 218 (1986) ("the State could not [justify its law] on the ground that . . . [this is] all the public can afford"). Neither is the generic burden associated with having to provide changes to an electoral process; "administrative convenience" is "not a sufficient basis . . . for infringing appellees' First Amendment rights." *Tashjian*, 479 U.S. at 218.

*Second*, even if there were compelling interests in the discriminatory process Defendants have imposed here—and there are none—the current laws are not "narrowly drawn" to advance the state interest. *Burdick*, 504 U.S. at 434. Most importantly, Defendants (through the Board of Elections) have admitted that they would be able to conduct the primaries for Congress and State Senate on August 23 without difficulty. *See* Ex. E ("NY BOE Letter") ("New York is capable of having new lines in time for a primary election on August 23, 2022, the date of a remedial primary ordered by Steuben County Court [.]"); *see Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 110 (2d Cir. 2008) (justification did not outweigh voting burden where State "actually appears to concede that administrative tasks like these can be performed"). And, indeed, the primaries for those races were moved to August 23.

There is simply no plausible reason why Defendants could not similarly move the statewide-offices primary from June 28 to August 23—i.e., the very same "less problematic measures," *Buckley v. Am. Const. L. Found.*, Inc., 525 U.S. 182, 204 (1999). In the same letter, the Board of Elections even explained that "New York is not unique in moving its primary to make more time. Multiple states this year have moved their primary elections to provide additional time to complete redistricting." Ex. E. A voting restriction must fail if "the State has open to it a less drastic way of satisfying its legitimate interests." *Anderson*, 460 U.S. at 793. That is plainly the case here. *See Cal. Democratic Party*, 530 U.S. at 584 (enjoining "unnecessary" rule, and reasoning that the state "could protect" the constitutional rights at issue by "resorting to a [different] primary").

### E. Even if the Court Concludes the Burden Is Less Severe, the Law Is Unconstitutional

Even if this Court were to conclude that New York's current *ad hoc* regime did not impose a severe burden on voters' rights—and for the reasons given above, a severe burden clearly is imposed—the challenged restrictions and practices are still unconstitutional. Even absent strict scrutiny, Defendants still must articulate an interest "sufficiently weighty to justify the limitation imposed on the [plaintiffs'] rights." *Timmons*, 520 U.S. at 364. No such interest exists here. The current state of affairs is wholly one of the Legislature's and Defendants' making. The New York Legislature imposed maps that were struck down by the New York Court of Appeals as blatantly violating the State Constitution. The aftermath of the Legislature's power grab and the incumbent-favoring process implemented by Defendants are what is burdening voters of all persuasions in their ability to support and vote for candidates they would prefer. Meanwhile, as noted above, the Board of Elections has *admitted* that it has no problem

with conducting the primary on August 23, instead of on June 28. *Supra* at I.D. Thus, Plaintiffs are likely to prevail no matter what level of scrutiny the Court undertakes.

*     *     *

Defendants' efforts to exclude candidates from ballots violate voters' right to free association and to cast an effective vote. *See Tashjian*, 479 U.S. at 235-36 (Scalia, J., dissenting) ("The ability of the members of the Republican Party to select their own candidate . . . unquestionably implicates an associational freedom"). No justification exists—let alone a compelling one—for New York's current electoral process. But a straightforward solution exists—move the primaries for statewide offices to August 23, 2022, the date already in place for congressional and State Senate primaries, and reopen and extend the petitioning period, *see* N.Y. Election Law § 4-110, to allow the addition of additional candidates to the ballot for all those races (and require current certified statewide candidates who qualified by petition process to submit new qualifying designating petitions).

## II.    The Harms Caused by Defendants' Continuing Constitutional Violations Are Irreparable

The League's allegation that its members' constitutional rights have been violated, as well as the individual Plaintiffs' allegation that their constitutional rights have been violated, necessarily make out irreparable harm. "[W]here a First Amendment right has been violated, the irreparable harm requirement for the issuance of a preliminary injunction has been satisfied." *Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004); *see Green Haven*, 16 F.4th at 80 ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.") (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)). Indeed, even "an alleged violation of a constitutional right triggers a finding of irreparable harm." *Johnson v. Miles*, 355 F. App'x 444, 446 (2d Cir. 2009) (quotation

marks omitted); *see Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("In any event, it is the *alleged* violation of a constitutional right that triggers a finding of irreparable harm.");

*Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 41 (S.D.N.Y. 2020) ("In the Second Circuit, it is well-settled that an alleged constitutional violation constitutes irreparable harm.") (citing cases). This element is thus easily satisfied.

## III. The Balance of Equities and the Public Interest Weigh Heavily in Favor of Preliminary Relief

Finally, when considering whether preliminary relief is warranted, a court must "balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the public consequences in employing the extraordinary remedy of injunction." *Yang*, 960 F.3d at 135-36 (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

Granting the relief Plaintiffs seek—(i) postponing the primaries for statewide offices to August 23, 2022, (ii) allowing for additional candidates to qualify for the primary ballot for those races and requiring previously certified candidates to submit valid designating petitions in light of the new maps, and (iii) affording independent statewide candidates more time to gather signatures for independent nominating petitions—would vindicate the constitutional rights of New York voters to support and elect candidates of their choice. *See N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013) ("[S]ecuring First Amendment rights is in the public interest.").

*First*, postponing the primary for statewide offices, and reopening the period to obtain signatures and file designating petitions for the primary ballot for such races, would ensure that voters would have the opportunity to support and vote for their preferred candidates. This relief would not require Defendants to do anything at all extraordinary with respect to New York's

election laws. Further, reopening the designating-petition period for all statewide candidates (including those previously certified) would level the playing field among candidates and their supporters—and facilitate the free political speech of voters and supporters—because voters who previously signed designating petitions under unlawful congressional maps would be free to support the candidate of their choosing. The foregoing undeniably vindicates the public interest in a fair and orderly electoral process.

*Second*, and on the other hand, Defendants would shoulder but a slight burden should the Court grant the requested relief. New York has already committed to an August 23 primary date for Congress and State Senate, and state law already favors a consolidated primary date to bifurcated primaries. *See* Election Law § 8-100(1)(a).[10] Certainly, the State would need to implement procedures to re-open the periods for petitioning and certification of the primary ballots for statewide races, but nothing suggests such a burden would cause anything remotely like the irreparable constitutional harm that otherwise would be visited on New York's voters. Indeed, the interstices of New York's Election Law expressly bless the relief sought here. The Election Law currently allow for primary ballots to be certified fifty-five days before the election, N.Y. Election Law § 4-110. Accordingly, extending the window to collect and file designating petitions to June 20—nine days before the June 29 certification deadline—would be consistent with New York law if an August 23 primary were to be conducted for all statewide races. The equities and public interest are firmly on the side of Plaintiffs.

---

[10] New York formerly held a single primary in September. In 2019, the September primary was moved to June. *See* 2019 Sess. Law News of N.Y. Ch. 5 (A. 779). Between 2012 and 2019, New York held two primaries—one for state and one for federal offices—pursuant to a court order moving the federal primary from September to June to ensure that New York complied with federal law regarding overseas voters. *See United States v. State of New York*, 2012 WL 254263, at *2 (N.D.N.Y. Jan. 27, 2012) (moving federal primary from September to June).

*Third*, the public interest favors additional time for independent statewide candidates to gather signatures to qualify for the general election ballot under valid congressional maps. As discussed, state law generally provides *six weeks* for such signature-gathering, as against *11 days* provided for in the 2022 election cycle. *Compare* N.Y. Election Law § 6-138(4). The First and Fourteenth Amendment rights of voters who wish to support independent candidates would undoubtedly be vindicated by affording a reasonable period of additional time (i.e., until June 20) to comply with the signature requirement in light of the new, valid congressional maps. *Anderson*, 460 U.S. at 792–94.

*Finally*, the principle articulated in *Purcell v. Gonzalez*, 549 U.S. 1 (2006), does not counsel against granting Plaintiffs' motion. That principle cautions against interference by federal courts into elections in close proximity to those elections. But the reasoning behind the *Purcell* principle does not apply here: "Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Id.* at 4–5; *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("[T]he *Purcell* principle . . . seeks to avoid this kind of judicially created confusion.").

Plaintiffs do not seek a remedy that might confuse voters and damage the electoral process. It is important to emphasize that it was the Legislature's ham-fisted attempt to subvert the state constitution and Defendants' subsequent actions that have violated voters' constitutional rights. *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring) ("[T]he *Purcell* principle [could] be overcome if the underlying merits are entirely clearcut[.]").[11] The

---

[11] *See id.* (Kavanaugh, J., concurring) ("I would think that the *Purcell* principle thus might be overcome even with respect to an injunction issued close to an election if a plaintiff establishes at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly

relief Plaintiffs request will allow for a more orderly process in which primaries are held on August 23, candidates may seek to appear on the ballot in light of valid congressional maps, and voters are assured that the candidates are eligible for the offices they seek. This is the appropriate remedy. *Cf. Lucas v. Townsend*, 486 U.S. 1301, 1302 (1988) (Kennedy, J., in chambers) (on May 30, enjoining a May 31 local election under federal law and explaining that "[p]ermitting the election to go forward would place the burdens of inertia and litigation delay on those whom the statute was intended to protect" and that burdens on respondents "can fairly be ascribed to the respondents' own failure" to comply with federal law "sufficiently in advance of the date chosen for the election"); *McCarthy v. Briscoe*, 429 U.S. 1317, 1317 (1976) (Powell, J., in chambers) (on September 30, ordering "Senator McCarthy's name placed on the 1976 general election ballot in Texas"); *Singleton v. Merrill*, 2022 WL 265001, at *82 (N.D. Ala. Jan. 24, 2022) ("Alabama's upcoming congressional elections will not occur on the basis of the map that is allegedly unconstitutional.").[12]

The relief requested here accords with what has already occurred in the state courts. The Court of Appeals was "confident that, in consultation with the Board of Elections, Supreme Court can swiftly develop a schedule to facilitate an August primary election, allowing time for the adoption of new constitutional maps, the dissemination of correct information to voters, the completion of the petitioning process, and compliance with federal voting laws[.]" *Harkenrider III*, at *12. As noted, the Board of Elections has agreed. *See supra* at I.D. There is no appropriate

---

delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.").

[12] *See also, e.g.*, *Harris v. McCrory*, 159 F. Supp. 3d 600 (M.D.N.C. 2016) (enjoining a State from using its enacted map in February of an election year, despite mid-March primary), *stay denied*, 577 U.S. 1129 (2016); *Personhuballah v. Alcorn*, 155 F. Supp. 3d 552 (E.D. Va. 2016) (imposing a new remedial map in January of an election year, despite mid-June primary), *stay denied*, 577 U.S. 1125 (2016).

reason to believe that confidence was misplaced or that it would be misguided if the Court were to grant this motion. And to the extent that Defendants complain of hurdles to comply with an order the Court enters, they do not come with clean hands. *Cf. Lucas*, 486 U.S. at 1302 (Kennedy, J., in chambers) (burdens on respondents "can fairly be ascribed to the respondents' own failure" to comply with federal law "sufficiently in advance of the date chosen for the election").

## **CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiff's motion for a preliminary injunction and enter an order:

1. Enjoining Defendants from holding the primary elections for New York statewide offices (Governor, Lieutenant Governor, Comptroller, and Attorney General) on June 28, 2022;

2. Directing Defendants to postpone the primary elections for New York statewide offices (Governor, Lieutenant Governor, Comptroller, and Attorney General) to August 23, 2022, thereby aligning the primary election date with the adjourned primary election dates for the State Senate and U.S. Congress;

3. Directing Defendants to require all candidates for New York statewide offices (Governor, Lieutenant Governor, Comptroller, and Attorney General)—including those listed on the May 4 certified ballot, except those designated by a party pursuant to N.Y. Election Law § 6-104—to submit new designating petitions pursuant to state law for a new primary ballot for statewide offices to be certified by Defendants in advance of the August 23 primary;

4. Directing Defendants to establish a reasonable process for additional candidates for New York statewide offices (Governor, Lieutenant Governor, Attorney General, and Comptroller) to appear on the certified primary ballot pursuant to applicable state law, including by extending the deadline to no earlier than June 20 for gathering signatures for party-affiliated designating petitions; and

5. Directing Defendants to extend the time period to no earlier than June 20 for gathering signatures for independent nominating petitions for the general election ballot for New York statewide offices.

Dated: May 18, 2022
      New York, New York

Respectfully submitted,

HOLWELL SHUSTER & GOLDBERG LLP


By:_____ /s/ *Gregory Dubinsky*_____
Gregory Dubinsky
James M. McGuire
Brian T. Goldman
Jan Jorritsma (*pro hac vice* forthcoming)
Daniel K. Phillips (*pro hac vice* forthcoming)

425 Lexington Avenue
New York, NY 10017
(646) 837-5151
gdubinsky@hsgllp.com

*Attorneys for Plaintiffs*