UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LEAGUE OF WOMEN VOTERS OF NEW YORK
STATE, PETRA GOPFERT, and LOULISE ERKSINE,

                  Plaintiffs,

        - against -

PETER S. KOSINSKI, in his official capacity as Co-
Chair of the State Board of Elections; DOUGLAS A.
KELLNER, in his official capacity as Co-Chair of the
State Board of Elections; ANDREW J. SPANO, in his
official capacity as Commissioner of the State Board of
Elections; ANTHONY J. CASALE, in his official
capacity as Commissioner of the State Board of
Elections; TODD D. VALENTINE, in his official
capacity as Co-Executive Director of the State Board
of Elections; and KRISTEN ZEBROWSKI STAVISKY,
in her official capacity as Co-Executive Director of the
State Board of Elections,

                  Defendants.

                  22-cv-4084 (PAE)

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General of the State of New York
*Attorney for Defendants*
28 Liberty Street, 17th Floor
New York, New York 10005
(212) 416-6536

ERIN KANDEL
Assistant Attorney General
*Of Counsel*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................**Error! Bookmark not defined.**

STATEMENT OF FACTS .......................................................................................... 3

   A.   Ballot Access Process for the Primary Election of Statewide Candidates.......................... 3

   B.   Congressional District Maps In Effect During the Statewide Designating Petitioning Period ........................................................................................................................ 4

   C.   Election Preparations for the June 28 Primary Are Well Underway and Are Nearly Complete ..................................................................................................................... 6

   D.   New York's Independent Nominating Petition Process ..................................................... 7

   E.   The Current Action ........................................................................................................ 9

STANDARD OF REVIEW ..................................................................................... 10

ARGUMENT ......................................................................................................... 11

I.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ALTERING THE STATUS QUO BEFORE THE JUNE 28 PRIMARY ELECTION ................................... 11

   A.   The Equities and Public Interest Weigh Heavily Against a Preliminary Injunction that Would Upend the June 28 Primary Election and Create a Significant Risk to the State's Ability to Hold a Fair and Orderly Primary Election. .......................................................... 12

   B.   Plaintiffs Cannot Demonstrate Immediate, Irreparable Harm Because They Have Not Been Harmed by the Certification of the Primary Ballot for Statewide Offices...................... 17

   C.   Plaintiffs Cannot Show a Likelihood of Success on the Merits........................................ 19

II.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION EXTENDING THE SIX-WEEK STATUTORY TIME PERIOD FOR INDEPENDENT NOMINATING PETITIONS ..................................................................................... 22

CONCLUSION...........................................................................**Error! Bookmark not defined.**

Defendants Peter S. Kosinski, in his official capacity as Co-Chair of the State Board of Elections; Douglas A. Kellner, in his official capacity as Co-Chair of the State Board of Elections; Andrew J. Spano, in his official capacity as Commissioner of the State Board of Elections; Anthony J. Casale, in his official capacity as Commissioner of the State Board of Elections; Todd D. Valentine, in his official capacity as Co-Executive Director of the State Board of Elections; and Kristen Zebrowski Stavisky, in her official capacity as Co-Executive Director of the State Board of Elections, (collectively, the "State Defendants"), respectfully submit this memorandum of law, as well as the accompanying Affidavit of Kristen Zebrowski Stavisky dated May 23, 2022 ("Stavisky Aff."), in opposition to Plaintiffs' motion for a preliminary injunction ("PI Mot.") (ECF Nos. 3, 10) and in response to the Court's Order to Show Cause (ECF No. 16).

## PRELIMINARY STATEMENT

New York's 2022 election cycle has already been upended by unprecedented shocks to the State's carefully calibrated election machinery. Nevertheless, due to the Herculean efforts of State and local election officials, the June 2022 Primary Election is now underway. Signatures for party designating petitions were collected back in April and the period for challenging those petitions has long-since passed. Primary ballots were certified weeks ago, and State and local boards of election are presently engaged in the myriad of logistical steps necessary to hold the June primary election, steps that can only take place once the ballot is finalized. Hundreds of thousands of ballots have already been printed, poll workers have been hired, and early in-person voting will soon begin. Critically, ballots have already been sent to overseas and military voters, many of whom will have already sent them back, *i.e.* they have already cast their ballots. Yet, Plaintiffs come before this Court and, on the thinnest of pretexts, ask for truly extraordinary relief – the postponement of an election already in progress. Plaintiffs' requested relief would cause New

York's election machinery to seize up: creating significant risks that a rescheduled primary election could be held in a fair and orderly manner, causing incalculable confusion and chaos among voters and candidates, and disenfranchising voters who have already voted, including military personnel protecting our country overseas.  Although Plaintiffs' claims lack merit, they certainly could have been brought in numerous different ways in the nearly two-month period since the State Supreme Court in Steuben County first called the validity of the Congressional redistricting map into question in *Harkenrider v. Hochul*.  The bottom line is that Plaintiffs are far too late to bring this challenge, which would create unfathomable chaos to the orderly administration of the Primary election and should be rejected.

Plaintiffs also seek to modify the rules governing the independent nominating process for ballot access.  The period for collecting signatures for independent nominating petitions began back in April and by law must conclude on May 31, 2022.  Here again, Plaintiffs bring their challenge far too late.  Requests for similar relief have already been made to and rejected by the State Supreme Court in Steuben County, which the New York Court of Appeals ruled is responsible for the remedial issues stemming from the invalidation of the Congressional redistricting map.  As courts frequently recognize in the context of last-minute efforts to challenge election procedures, changing the rules at the last minute would prejudice candidates who have conducted their campaigns in reliance on the existing rules and creates an undue burden on election officials.

Plaintiffs are not entitled to this or any of the extraordinary relief they seek by their motion for a preliminary injunction. The Court should therefore deny Plaintiffs' motion.

**STATEMENT OF FACTS**

**A.  Ballot Access Process for the Primary Election of Statewide Candidates**

By statute, New York's primary election is normally held on the fourth Tuesday in June, which in 2022 falls on June 28. *See* N.Y. Election Law 8-100(1). Statewide candidates can get on the ballot for a party primary election in one of two ways: (1) by party certificate of designation issued by the party's state committee, *see id.* § 6-104; or (2) by filing a designating petition which must be signed by 15,000 enrollees of the party or 5% of the enrollment number, whichever is less, *see id.* §§ 6-104, 6-134, 6-136(1).

New York Election Law requires a level of geographic distribution of a candidate's signature collection effort. Specifically, Election Law § 6-136 requires that, for signatures on a designating petition, " . . . not less than one hundred or five percentum, whichever is less, of such enrolled voters shall reside in each of one-half of the congressional districts of the state." *Id.* § 6-136. This distribution requirement applies to just 1,300 of the 15,000 required signatures on a designating petition. Stavisky Aff. ¶ 38. The purpose of the congressional distribution requirement is to ensure that statewide candidates have real support among members of the voting public before placing them on the ballot. *See id.* The State has an interest in requiring candidates for statewide office to demonstrate some modicum of statewide support. *See id.* ¶¶ 10, 38. But the burden of this requirement is modest, as demonstrated by the fact that for the June 2022 Primary every single candidate for statewide office who gathered enough signatures was able to easily meet the distribution requirement. *See id.* ¶ 43.

The relevant dates and deadlines applicable to every election cycle in New York can be found in the New York Election Law, as well as the political calendar published each year by the

New York State Board of Elections.[1] Specifically, signature collection for designating petitions ran from March 1, 2022 until April 7, 2022. Stavisky Aff. ¶ 5. Candidates who obtained ballot access for statewide offices by designating petition were required to file their designating petitions no later than April 7, 2022. *Id.*; N.Y. Election Law § 6-158 (1).[2] The deadline to challenge primary designations was April 21, 2022. Stavisky Aff. ¶ 42; N.Y. Election Law 16-102.

### B. Congressional District Maps In Effect During the Statewide Designating Petitioning Period

On February 3, 2022 the New York Legislature enacted two laws that, collectively, established New York's legislative-district maps for Congress, the State Senate, and the State Assembly ("the February 2022 District Maps"). Stavisky Aff. ¶ 6. On March 31, 2022 – approximately one week before the end of statewide designating petitioning and signature collection period that began on March 1, 2022 –Supreme Court, Steuben County issued a court order in *Harkenrider v. Hochul* that, among other things, struck down the February 2022 District Maps. *See* Stavisky Aff. ¶ 6.

The following day, on April 1, 2022, New York's Appellate Division, Fourth Department ("the Fourth Department") issued an order immediately staying enforcement of the trial court order the invalidating the February 2022 District Maps. *Id.* ¶ 8; Ex. A.[3] The stay was issued precisely so

---

[1]    *See* New York State Board of Elections 2022 Political Calendar, *available at* chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.elections.ny.gov/NYSBOE/law/2022PoliticalCalendar.pdf.

[2]    Candidates who obtained ballot access for statewide offices by certificate of designation from a party committee were required to file their certificates no later than the first week in March. Stavisky Aff. ¶ 4; N.Y. Election Law 6-104 (5), (6).

[3]    On April 1, 2022, the Fourth Department issued a stay as a decretal paragraph in an Order to Show Cause, providing that "pending the hearing and determination of this motion, said judgment is STAYED in its entirety." Stavisky Aff. ¶ 8, Ex. A. On April 8, 2022, Hon. Stephen K. Lindley of the Fourth Department issued a decision permitting ballot access to continue, expressly providing that the stay applied to "provisions of the order that enjoin respondents and

that ballot access processes could continue. *Id.* ¶ 9. Because of the stay, the February 2022 District Maps remained in effect throughout the close of the statewide designating petitioning period on April 7, 2022. *Id.* ¶ 10.

In light of the timing of the *Harkenrider* case and the stay issued by the Fourth Department, the February 2022 District Maps remained valid and in effect throughout the statewide designating petitioning period between March 1, 2022 and April 7, 2022. *See id.* The congressional lines reflected in the February 2022 District Maps served as a means of ensuring some modicum of geographic distribution of signature collection on statewide petitions. *See id.* Throughout the petitioning process, the State Board advised all candidates to file their petitions. *Id.* ¶ 44. By the time the deadline to challenge primary designations passed on April 21, 2022, no candidate had a petition disqualified for not having an adequate congressional distribution. *Id.* ¶ 43.

On April 27, 2022, twenty days after the designating petition period ended, the New York Court of Appeals issued a decision in *Harkenrider* declaring the February 2022 District Maps unconstitutional and remitting the case to Supreme Court, Steuben County to publish new congressional district maps. *See* Stavisky Aff. ¶ 11. The Court of Appeal's decision effectively invalidated the February 2022 District Maps and ended the stay imposed by the Fourth Department. *See id.* However, by this time, the statewide designating petitioning period had ended and the deadline to challenge primary designations had passed. *See id.* ¶ 42. And while the Court of Appeals' decision clearly prevented prospective use of the February 2022 District Map for purposes of electing State Senators and Members of the United States House of Representatives, it did not impair the prior use of and reliance on the February 2022 District Maps during

---

their agents, including officials from the various boards of elections, from 'using, applying, administering, enforcing or implementing any of the recently enacted 2022 maps for this or any other election…" *Id.* ¶ 9, Ex. B.

designating petition period as a means of ensuring geographic distribution of signature collection on statewide petitions. *Id.* ¶ 11.

Accordingly, on May 4, 2022, the State Board of Elections certified the statewide candidates and ballot positions for the June 28, 2022 primary election ("June 28 Primary") in accordance with Election Law § 4-110 and the 2022 Political Calendar. *See* Stavisky Aff. ¶ 25. The certified primary ballots for statewide offices include candidates for Governor, Lieutenant Governor, Comptroller, and Attorney General.

### C. Election Preparations for the June 28 Primary Are Well Underway and Are Nearly Complete

By the May 25, 2022 date of the Court's hearing on this matter, the June 28 Primary will be *just 34 days away*, with *early voting to begin in 24 days*. *Id.* ¶ 23. The highly complex and integrated election mechanics for the June 28 Primary have been underway for months and now are nearly complete. *See id.* ¶ 26.

The June 28 Primary presently includes statewide contests for which there are primaries – many are unopposed – as well as primaries for State Assembly, various party positions, and many local offices. *Id.* ¶ 23. Following the State Board of Elections' certification of the primary ballot for statewide offices on May 4, 2022, local boards of elections[4] prepared and printed integrated primary ballots that include candidates for the statewide offices as well as the candidates for state assembly, party positions, and local offices that are unique to each election district. *See id.* ¶¶ 24-

---

[4]    In New York, elections are largely administered by county-level boards of election, except for the five counties that make up New York City, for which a single New York City Board of Elections is responsible.

26.[5] These integrated primary ballots were already sent to thousands of military and overseas voters on or before May 13, 2022, pursuant to the timeframes required under federal law. *See id.* ¶ 27; N.Y. Election Law 10-108. By the May 25, 2022 hearing, absentee ballots will have been printed for more than 200,000 non-military voters, and many of those ballots will also have been mailed. Stavisky Aff. ¶ 28. In addition, *at least* 700,000 primary ballots have been printed, and substantially more ballots will have been printed by the May 25, 2022 hearing. *Id.* ¶ 30. Meanwhile, test ballots for pre-election testing of voting machines have been printed for New York City and many other counties; 356 early voting sites have been selected and engaged to host nine days of early voting; and more than 5,000 election day poll sites have been selected and engaged for June 28, 2022. *Id.* ¶¶ 32, 34. More than 50,000 poll workers to work on early voting days and primary day have been scheduled for service. *Id.* ¶ 33. Staff allocations and vehicle rentals and/or transport contracts to send voting equipment to poll sites have been arranged. *Id.* ¶ 34. Mail notification to New York's voters informing them of the June 28 primary date and location of the early voting sites and poll sites has occurred or is in final production, as is the case for 4.7 million notifications to New York City voters. *Id.* ¶ 35; N.Y. Election Law 4-117. New York City and other boards have also engaged media campaigns to inform voters about the multiple primaries and what contests will apply. Stavisky Aff. ¶ 35.

### D.  New York's Independent Nominating Petition Process

For an independent candidate to secure nomination and access to the November General Election ballot, the requisite number of valid signatures of registered New York voters who reside in the political unit for which the nomination is sought must be collected on an independent

---

[5]     For each party, the integrated primary ballot includes all the contests for that party in any particular subdivision. Stavisky Aff. ¶ 24. For example, in a town, the gubernatorial primary will appear on the same ballot with the party's primary for a town office. *Id.*

nominating petition, within a limited period of six weeks. *Id.* ¶ 15. The independent nominating petition must then be filed with either the State Board of Elections or in some cases local boards of election. *Id.*; N.Y. Election Law §§ 138(4), 144. To be nominated for such a statewide office, 45,000 valid signatures are required on an independent nominating petition from among the 12,982,819 registered voters in New York State, with at least 500 from each of half of New York's Congressional districts. Stavisky Aff. ¶ 16; *see* https://www.elections.ny.gov/EnrollmentCounty .html; N.Y. Election Law§ 6-142(1).

The nominating petition and signature requirement provide a necessary means for proposed candidates to demonstrate sufficient support in the electorate to obtain ballot access. Stavisky Aff. ¶ 16. Under this system, candidates who are politically viable can access the ballot and those who lack a modicum of support cannot, thus avoiding a ballot listing so many candidates that it causes voter confusion. *Id.* Meanwhile, New York's statewide signature requirement (which amounts to 0.35% of New York's registered voter population) is significantly lower than that of many other states, both in absolute numbers and percentage of registered voters, and comparatively imposes much lower burden on candidates and their supporters. *Id.*

The independent nominating period pursuant to law for the 2022 election spanned from April 19 to May 31, with filings permitted between May 24 and May 31. *Id.* ¶ 19. On May 11, 2022, the Supreme Court, Steuben County issued an order in *Harkenrider* establishing a new political calendar that, *inter alia*, set a full independent nominating period for congress and state senate to run from May 21, 2022 to July 5, 2022. *Id.* ¶ 20. The court did not alter the political calendar for statewide or other independent candidates. *Id.* ¶ 21; *see Harkenrider v. Hochul*, Index No. E2022-0116CV, Dkt. No. 524 (Sup. Ct., Steuben Cty. May 11, 2022). In fact, on May 5, 2022, Supreme Court, Steuben County expressly declined "to alter the time frame for gathering

signatures for Independent Nominating Petitions for statewide elections," stating: "Election Law § 138 (4) sets a six-week time period for the gathering of signatures for Independent petitions …. Once the Congressional map has been established it will be up to the candidate to make sure he/she has the appropriate number of signatures from the appropriate number of different districts." *Harkenrider v. Hochul*, Index No. E2022-0116CV, Dkt. No. 409 (Sup. Ct., Steuben Cty. May 5, 2022); *see* Stavisky Aff. ¶ 22.[6]

### E. The Current Action

Plaintiffs are a voting rights group and two voters who allege violations of their First and Fourteenth Amendment rights to free association and effective vote based on Defendants' (1) certification of the primary ballots for statewide offices on May 4, 2022, and (2) declination to extend the statutory six-week time period for independent candidates to gather signatures for independent nominating petitions. *See generally* Compl.

Plaintiffs commenced this action and filed the instant motion for a preliminary injunction on May 18, 2022. *See generally* PI Mot. Critically, this was two weeks *after* the State Board of Elections certified the June 28 Primary ballot for statewide offices, and 13 days after Supreme Court, Steuben County issued an order in *Harkenrider* declining to the extend the six-week statutory period for independent nominating petitions. *See* Stavisky Aff. ¶¶ 22, 25. Plaintiffs nevertheless seek wide-reaching injunctive relief that would drastically change the status quo by

---

[6]     Supreme Court, Steuben County has again declined to extend the six-week petitioning period for independent nominating petitions. *See Harkenrider v. Hochul*, Index No. E2022-0116CV, Dkt. No. 668 (Sup. Ct., Steuben Cty. May 20, 2022). In a decision and order dated May 20, 2022, the Supreme Court denied a motion by potential intervenors in *Harkenrider* who were seeking, *inter alia*, various relief with respect to the signature requirements for independent nominating petitions. *See id.* The court stated, as relevant here: "Election Law § 6-138(4) prescribes a six week petitioning period for Independent nominators. To add to that time frame would contravene that law. The candidates for statewide office will have had their full six week time frame to gather signatures." *Id.*

(1) enjoining Defendants from holding the primary elections for statewide offices on June 28, 2022; (2) directing Defendants to postpone the primary elections for statewide offices to August 23, 2022; (3) directing Defendants to require all candidates for statewide offices—including those listed on the May 4 certified ballot, except those designated by a party pursuant to Election Law § 6-104—to submit new designating petitions pursuant to state law for a new primary ballot for statewide offices to be certified by Defendants in advance of the August 23 primary; (4) directing Defendants to establish a process for additional candidates for statewide offices to appear on the certified primary ballot pursuant to applicable state law, including by extending the deadline to no earlier than June 20 for gathering signatures for party-affiliated designating petitions; and (5) directing Defendants to extend the time period to no earlier than June 20 for gathering signatures for independent nominating petitions for the general election ballot for statewide offices. *See* Order to Show Cause (ECF No. 16).

For the reasons set forth below, Plaintiffs fail to satisfy the stringent requirements to obtain such extraordinary relief, and their motion for a preliminary injunction should therefore be denied.

## <u>STANDARD OF REVIEW</u>

A "preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 24 (2008). Plaintiffs bear the burden of establishing (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, and (4) that an injunction is in the public interest. *Id.* at 20. The final two factors—the balance of the equities and the public interest—"merge" when the Government is the opposing party." *L&M Bus Corp. v. Bd. of Educ. of City Sch. Dist. of City of N.Y.*, No. 18-CV-1902, 2018 WL 2390125, at *13 (E.D.N.Y. May 25, 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 435

(2009)).

In addition, the Second Circuit holds the movant to a heightened standard when, as here, (i) an injunction is "mandatory" (*i.e.*, altering the status quo, rather than maintaining it), or (ii) it "will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015). In such cases, both of which apply here, the movant must show a "clear" or "substantial" likelihood of success on the merits and make a "strong showing" of irreparable harm, in addition to that the preliminary injunction is in the public interest. *See id.* (quoting *Beal v. Stern*, 184 F.3d 117, 123 (2d Cir. 1999), and *Doe v. New York Univ.*, 666 F.2d 761, 773 (2d Cir. 1981)).

Additionally, the U.S. Supreme Court has repeatedly cautioned that "courts must take careful account of considerations specific to election cases." *Veasey v. Perry*, 135 S. Ct. 9, 10 (2014). "Court orders affecting elections [can] result in voter confusion" and that, "[a]s an election draws closer, that risk will increase." *Purcell v. Gonzalez*, 529 U.S. 1, 4-5 (2006); *see also Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020).

## ARGUMENT

### I.   PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION ALTERING THE STATUS QUO BEFORE THE JUNE 28 PRIMARY ELECTION

Mere weeks before June 28 Primary, which is already well underway, and following their own inexplicable delay in coming to court, Plaintiffs seek a preliminary injunction to invalidate the currently certified primary ballots for statewide offices; to reschedule the primary election for statewide offices from June 28, 2022 to August 23, 2022; and to re-open the petitioning period for party designating petitions for Statewide offices. Plaintiffs cannot satisfy the rigorous standards that would entitle them to the drastic, immediate injunctive relief they seek. Among other issues,

the equities and public interest factors weigh heavily against granting the requested injunctive relief. Nor can Plaintiffs make a strong showing of irreparable harm or a clear likelihood of success on the merits. Their motion for a preliminary injunction should therefore be denied.

### A. The Equities and Public Interest Weigh Heavily Against a Preliminary Injunction that Would Upend the June 28 Primary Election and Create a Significant Risk to the State's Ability to Hold a Fair and Orderly Primary Election.

In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). For any preliminary injunction, "the court must ensure that the 'public interest would not be disserved' by the issuance of a preliminary injunction." *Salinger v. Colting*, 607 F.3d 68, 80 (2d Cir. 2010) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)); *see also Stagg P.C. v. U.S. Dep't of State*, 158 F. Supp. 3d 203, 210 (S.D.N.Y. 2016) ("[e]ven assuming . . . a substantial likelihood of success" on the First Amendment claim, "the balance of equities and the public interest both require the denial of this preliminary injunction"). In elections in particular, "the paramount interest in fair and legal voting counsels caution rather than haste." *Favors v. Cuomo*, 881 F. Supp. 2d 356, 371 (E.D.N.Y. 2012) (three-judge court); *Silberberg v. Bd. of Elec. of the State of N.Y.*, 216 F. Supp. 3d 411, 420–21 (S.D.N.Y. 2016) ("Regardless of the potential merits of the plaintiffs' claim, granting a preliminary injunction at this late stage is a recipe for confusion[.]").

"Court orders affecting elections . . . can themselves result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5. As the Supreme Court has cautioned,

> [i]n awarding or withholding immediate relief, a court is entitled to and should consider the proximity of a forthcoming election and the mechanics and complexities of state election laws, and should act and rely upon general equitable principles. With respect to the

> timing of relief, a court can reasonably endeavor to avoid a disruption of the election process which might result from requiring precipitate changes that could make unreasonable or embarrassing demands on a State in adjusting to the requirements of the court's decree.

*Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *see also Westermann v. Nelson*, 409 U.S. 1236, 1236-37 (1972) (preliminary injunction denied where election machinery was under way, " . . . because orderly election processes would likely be disrupted by so late an action"); *Green Party v. Weiner*, No. 00 Civ. 6639, 2000 WL 1280913, at *4 (S.D.N.Y. Sept. 8, 2000) (preliminary injunction denied where to order such relief would cause "disruption of the state's orderly election process"); *Diaz v. Silver*, 932 F. Supp. 462, 466-68 (E.D.N.Y. 1996) (three-judge court) (preliminary injunction in election case denied on public interest grounds where it would interfere with "'election machinery . . . already in gear'" (quoting *Roman v. Sincock*, 377 U.S. 695, 709-10 (1964)).

Plaintiffs here have not shown that the equities or the public interest favor the drastic immediate injunctive relief they seek. As discussed *supra* and in the Stavisky Affidavit, lengthy and complex preparations for the June 28 Primary have been underway for months, and with just weeks before that scheduled election, are nearly complete. *See* Stavisky Aff. ¶¶ 23-37. Indeed, the election has already begun and voters have already cast ballots.  After the State Board of Elections certified the primary ballot for statewide offices on May 4, 2022, integrated ballots were printed and mailed to thousands of military and overseas voters, and by the May 25, 2022 hearing on this motion, **hundreds of thousands more** absentee ballots will have been printed and mailed to non-military absentee voters. *Id.* ¶¶ 25-28. In addition, *at least* 700,000 primary ballots have been printed, and substantially more ballots will have been printed by the May 25, 2022 hearing. *Id.* ¶ 30. Test ballots for pre-election testing of voting machines also have been printed for New York

13

City and many other counties. *Id.* ¶ 29. Time-sensitive and costly logistics have also been arranged for early voting and election day poll sites. *See id.* ¶¶ 32-34. Millions of voters across the State have also received—or are about to receive in the coming days—notification by mail informing them of the June 28 Primary date and location of the early voting sites and poll sites. *Id.* ¶ 35. New York City and other boards have also engaged media campaigns to inform voters about the multiple primaries and what contests will apply. *Id.* Notably, this year's election calendar has already been beset by unexpected changes in light of the *Harkenrider* litigation. Thus, the efforts by election officials to nevertheless inform voters of those changes and their options for exercising their right to vote should not be undermined by any further last-minute confusion.

In light of these circumstances, it is clear that the injunctive relief sought by Plaintiffs would severely disrupt the State's orderly election process, a fact that tips the balance of equities and public interest heavily in Defendants' favor. Plaintiffs' suggestion to simply move the Statewide primary election to August completely overlooks the disruption such a move would cause, especially at this late stage of the June 28 Primary. At this point in time, ballots already have been printed and mailed, and votes by military, overseas, and absentee voters have likely already been cast. *See id.* ¶¶ 25-28. If statewide offices were removed from the primary ballot at this late juncture, voters who have already voted for in statewide primary would need to be instructed to do so again. *Id.* ¶ 37. New ballots would need to be prepared, proofed and printed: an undertaking that would not only be extremely costly and burdensome, but problematic given supply chain problems identified by ballot printers across the State. Id. ¶¶ 36-37.[7] Changing the

---

[7]     As discussed in the Stavisky Affidavit, upon information and belief from New York's two main ballot printers and some counties that print their own ballots, there is a substantial and unprecedented supply chain problem related to ballot paper, envelopes and printing toner. If the June primary must be reconfigured, in addition to the waste of throwing away a vast inventory of ballots, the larger problem is the risk sufficient paper and envelopes will not be available in time

ballot also requires reprogramming voting machines and retesting those machines. *See id.* ¶¶ 29, 31. Crucially, if the statewide candidates were to change now, the ability of boards of elections to timely test election machines to ensure the machines are tabulating paper ballots correctly – a time consuming but crucial process to ensure election integrity – would be imperiled for the remaining primaries that would still proceed on June 28, 2022. *Id.* ¶ 31; *see* 9 N.Y.C.R.R. 6210.2. Moreover, hand counting or similar procedures for counting already submitted absentee ballots with statewide candidates that also include live local ballot contests would need to be implemented because the old ballots will not be readable by reprogrammed scanners. *Id.* ¶ 37. Finally, postponing the primary for statewide candidates from June 28, 2022 to August 23, 2022 would almost certainly engender mass voter confusion. *See id.* ¶ 35.

"A State indisputably has a compelling interest in preserving the integrity of its election process" to avoid voter confusion, potential disenfranchisement, and ballot chaos. *Purcell*, 549 U.S. at 4 (quoting *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 231 (1989)) (internal quotation marks omitted).  A State's interest in at its zenith when last-minute orders would put at significant risk its ability to hold fair and orderly elections.  Particularly where, as here, an election is already under way and proceeding upon rules and processes relied upon by candidates, voters, and election officials, the public interest in avoiding chaos and confusion is beyond compelling.  Given that overseas and military ballots were sent out on May 13, 2022, it is a certainty that ballots have already been cast – it is too late.

In addition to voters and election officials, existing candidates in the June 28 Primary would be prejudiced if Plaintiffs' eleventh-hour request for emergency relief were granted. Having

---

to reprint for the remaining June primaries. Local boards report that ballot paper orders are on allocation, meaning full orders are not being met on time. Stavisky Aff. ¶ 36.

timely and properly completed the designating petition process months ago, these candidates – many of whom are currently running unopposed – would suddenly be required to submit new designating petitions and to face potential challenges to those petitions or, in the case of candidates designated by their party, new challengers for the nomination.

Ultimately, the fact that this motion will not be heard until "the crucial final weeks" before the June 28 Primary is due entirely to Plaintiffs' unreasonable delay. *Respect Maine PAC v. McKee*, 622 F.3d 13, 16 (1st Cir. 2010). New York's primary election is normally held on the fourth Tuesday in June, which in 2022 falls on June 28 as provided by N.Y. Election Law 8-100 (1). Plaintiffs have been on notice as to validity of the Congressional redistricting map since it was first struck down by Supreme Court, Steuben County, on March 31, 2022.  They did not seek to timely intervene in that action.  Moreover, on April 29, 2022, Supreme Court, Steuben County issued an order in *Harkenrider* that, as relevant here, rescheduled the congressional and State Senate primary elections from June 28, 2022 to August 23, 2022, but did not postpone the June 28 Primary election for statewide offices. *See* Stavisky Aff. ¶ 12; *see Harkenrider v. Hochul*, Index No. E2022-0116CV, Dkt. No. 296, 301 (Sup. Ct., Steuben Cty. Apr. 29, 2022). Thus, Plaintiffs have known for nearly a month that the *Harkenrider* court would not postpone the June 28 Primary for statewide offices. Finally, on May 4, 2022, the State Board of Elections certified the statewide candidates and ballot positions for the June 28 Primary. Stavisky Aff. ¶ 25. Plaintiffs have therefore known for weeks that the June 28 Primary for statewide offices had been finalized.

Yet Plaintiffs waited until May 18, 2022, long after the contours of the June 28 Primary were finally set by the remedial orders in *Harkenrider* and relied upon by candidates and election officials, to file this lawsuit. This extreme delay not only negates Plaintiffs' assertion of irreparable harm, *see infra* at Section I.B, it is also fatal to their request for a preliminary injunction under the

balancing of the equities requirement. *See Conservative Party of New York State v. New York State Board of Elections*, No. 10 Civ. 6923, 2010 WL 4455867, at *2 (S.D.N.Y. Oct. 15, 2010) (no need to reach merits on preliminary injunction motion, where plaintiffs have "slept on their rights" and waited until shortly before election to seek onerous and confusing relief); *Wada Marketing Grp. LLC v. Ven-Co Produce, Inc.*, No. 11 Civ. 3052, 2011 WL 5545963, at *4 (S.D.N.Y. Aug. 9, 2011) ("Critical to a determination of irreparable injury is the prompt seeking of relief"); *Hessel v. Christie's Inc.*, 399 F. Supp. 2d 506, 520-21 (S.D.N.Y. 2005) (denying preliminary injunction because "the balance of hardships does not tip decisively in" favor of a movant that could have filed its "application two months ago"); *Walt Disney Productions v. Basmajian*, 600 F. Supp. 439, 442 (S.D.N.Y. 1984) (equities favor defendants where plaintiff sued shortly before the event complained of; preliminary injunction denied).

### B. Plaintiffs Cannot Demonstrate Immediate, Irreparable Harm Because They Have Not Been Harmed by the Certification of the Primary Ballot for Statewide Offices.

Moreover, Plaintiffs have not shown entitlement to the extraordinary relief of a mandatory injunction against the State because Plaintiffs' speculation as to the nature of their injury fails to carry their heavy burden of demonstrating imminent, irreparable harm absent an injunction. *See Singas Famous Pizza Brands Corp. v. N.Y. Advert. LLC*, 468 F. App'x 43, 45 (2d Cir. 2012) (imminent harm is "the single most important prerequisite for the issuance of a preliminary injunction"). To satisfy the irreparable harm requirement, a plaintiff "must demonstrate that absent a preliminary injunction [he or she] will suffer an injury that is neither remote nor speculative, but actual and imminent . . . ." *Seifullah v. City of N.Y.*, 2017 WL 4339478, at *1 (E.D.N.Y. Sept. 27, 2017) (quoting *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) and *citing Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)). Although under certain circumstances, an assertion of the loss of First Amendment freedoms may permit a

court to presume irreparable harm, *see Kermani v. N.Y. State Bd. of Elections*, 487 F. Supp. 2d 101 (N.D.N.Y. 2006) (injunction granted against enforcement of Election Law section restricting outside expenditures in primary elections), such factors are not present here.

Here, Plaintiffs' alleged harm is completely speculative.  Plaintiffs have conjured an attenuated theory of injury stemming from the modest distribution requirement for designating petition signatures.  They claim that certification of the primary was illegal because "despite the fact a candidate wishes to appear on that ballot, and believes he could obtain the required number of signatures given valid congressional districts, and (ii) doubtless others would wish to appear on the ballot." Decl. of Gregory Dubinsky ¶ 11 (ECF No. 4). There is no plausible basis for this assertion.  It would be a stretch for a candidate to claim that she declined to participate at all in the designating petition process because she believed there was not valid Congressional maps in place to assess the distribution of signatures.  One would expect a candidate who held such a mistaken view to nevertheless participate in the designating petition process that proceeded according to the Election Law, was not enjoined by any court order, and concluded prior to the Court of Appeals decision in *Harkenrider*.  It is hard to understand how such a candidate could claim harm if she sat out the process entirely.  But it is even more difficult to ascertain the harm to a voter who wishes to vote for such an imagined and non-existent candidate.  Critically, no candidate's designating petition for statewide office was disqualified for failing to obtain sufficiently distributed signatures. *See* Stavisky Aff. ¶ 43. Thus, the number of candidates for whom Plaintiffs could plausibly claim that they wanted to vote for but cannot stands at exactly zero.  Similarly, there is no indication as how Plaintiff the League of Women Voters is injured, separately and apart from an asserted harm to its members, by the alleged constitutional infirmities articulated.

Plaintiffs' delay in bringing suit also undercuts their claim of irreparable harm. "Delay in

seeking a preliminary injunction can weaken a claim of irreparable harm because 'the failure to act sooner undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief.'" *Environmental Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 279 (E.D.N.Y 2014) (quoting Tough Traveler, Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995); *see also FC Online Marketing, Inc. v. Burke's Martial Arts, LLC*, No. 14 CV 3685, 2015 WL 4162757, at *32 (E.D.N.Y. July 8, 2015) ("In assessing irreparable harm, courts should generally consider any undue delay by the plaintiff in seeking the preliminary injunction" and collecting cases). Plaintiffs' undue delay in moving for relief and the disruption such relief would cause to the election process already under way are important factors in the weighing of the equities among the parties and the public interest. When those factors favor defendants, as they do here, preliminary injunctive relief must be denied, notwithstanding irreparable harm or even likelihood of ultimate success. *See Stagg*, 158 F. Supp. 3d at 210.

Thus, Plaintiffs cannot show an immediate, irreparable harm absent the issuance of an injunction, and their motion should be denied on this basis.

### C.  Plaintiffs Cannot Show a Likelihood of Success on the Merits.

While the U.S. Constitution affords qualified protections to the right to run for political office, it is well established that states have broad authority to manage elections, including, specifically, the right to promulgate laws that reasonably regulate the ability to appear on the ballot. As the U.S. Supreme Court has made clear, "a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983).

Election regulation laws are analyzed under a balancing test derived from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under the

*Anderson-Burdick* framework, the court must weigh the "'character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments . . .' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). In applying this "sliding scale" test, the severity of the restrictions imposed determines the level of judicial review. "Regulations imposing severe burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 359 (1997) (internal quotations omitted). "By contrast, 'when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify' the restrictions." *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020) (quoting *Burdick*, 504 U.S. at 434) (internal quotation marks omitted). "'Review in such circumstances will be quite deferential, and [courts] will not require elaborate, empirical verification of the weightiness of the State's asserted justifications.[']" *Id.* (quoting *Price v. New York State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (internal quotation marks omitted); *see Timmons*, 520 U.S. at 359 ("Lesser burdens, however, trigger less exacting review, and a State's important regulatory interests will usually be enough to justify reasonable, nondiscriminatory restrictions.") (internal quotations omitted)). Notably, "[c]andidacy is not a fundamental right in our political system, and not all restrictions imposed by the States on candidates' eligibility for the ballot impose constitutionally suspect burdens on voters' rights to associate or to choose among candidates." *Fulani v. McAuliffe*, 2005 WL 2276881, at *3 (S.D.N.Y. Sept. 19, 2005) (citing *Anderson*, 460 U.S. at 788, *and Clements v. Fashing*, 457 U.S. 957, 963 (1982)); *see also Thompson v. DeWine*, 959 F.3d 804, 810 (6th Cir. 2020) (holding Ohio likely to prevail on its claim that maintaining its election regulations

during COVID-19 pandemic did not violate First Amendment rights of candidates petitioning to obtain place on ballot via a state requirement to obtain signatures in ink, and finding "just because procuring signatures is now harder . . . doesn't mean that Plaintiffs are excluded from the ballot.").

Pointing to the Court of Appeals' April 27 decision in *Harkenrider*, Plaintiffs complain that Defendants' certification of the primary ballot for statewide offices on May 4 was unconstitutional because "there [were] no lawfully existing congressional maps in New York" at that time. PI Mot. at 18. This resulted, according to Plaintiffs, in a certified primary ballot that includes candidates "who necessarily could not have met the dictates of Election Law § 6-136 and exclude[es] all would-be candidates who could seek to qualify by obtaining signatures under the forthcoming valid congressional maps." *Id.* But the entire premise of Plaintiffs' claim is faulty. Given the impact of a stay granted by the Fourth Department, there was a valid Congressional district map during the entirety of the petitioning period for statewide designating petitions.

Plaintiffs fall well short of establishing a clear likelihood of success on this claim. First, Plaintiffs' argument that it was unlawful for Defendants to certify the primary ballot on May 4 after the Court of Appeals invalidated the state's congressional maps on April 27, 2022 is a red herring because ***valid congressional maps were in effect during the entire designating petition period for statewide candidates***. Specifically, valid congressional maps were in effect (1) during the signature collection period for designating petitions that ran from March 1, 2022 until April 7, 2022, and (2) on the April 7, 2022 deadline for candidates to file their designating petitions. *See* Stavisky Aff. ¶ 5; Exs. A & B. Although Supreme Court, Steuben County issued a decision invalidating the state's congressional district lines on March 31, 2022, the Fourth Department, issued a stay of that decision the following day, on April 1, 2022, and this stay expressly applied to the provisions of the Supreme Court order that enjoined election officials from "'using,

applying, administering, enforcing or implementing any of the recently enacted 2022 maps for this or any other election…" *See id.*, Ex. B. In short, no constitutional infirmity or deprivation occurred when the State Defendants certified the primary ballot on May 4 because the time for candidates to get on the primary ballot by designating petition had passed by that date, when valid congressional maps were in effect.

Given the complete absence of constitutional harm, Plaintiffs' additional arguments cannot save their claims. Plaintiffs provide affidavits from voters who they claim that "[b]ecause of Defendants' certification of the primary ballot for statewide races . . . [they] cannot support any petitions to add candidates to the ballot." PI Mot. at 18 (citing Gopfert Decl. ¶¶ 15-17; Erskine Decl. ¶¶14-17; Doran Decl. ¶¶ 15-18). But this is an unavailing argument because the time to collect signatures and file a designating petition had come and gone (April 7) by the time the ballots were certified on May 4, and since that process was based on then-valid maps, there could be no need or valid expectation that there would be additional candidates. Plaintiffs also argue that "[t]he certification renders it impossible for additional statewide candidates to appear on the primary ballot, burdening voters' core associational and related rights." PI Mot. at 19. But again, there was no need or legitimate expectation for additional candidate to appear on the ballot when the ballot access process proceeded in a timely matter and with valid maps. Defendants did not "deprive the voter . . . of the right to participate in the primary process by placing on the ballot candidates whom he or she supports." PI Mot at 19. Voters will have the right to participate in the process by voting for primary candidates who completed the designating petition process.

## II.    PLAINTIFFS ARE NOT ENTITLED TO A PRELIMINARY INJUNCTION EXTENDING THE SIX-WEEK STATUTORY TIME PERIOD FOR INDEPENDENT NOMINATING PETITIONS

Plaintiffs also seek an injunction that would require a material deviation from the rules

governing the in-progress period for collecting signatures for independent nominating petitions. The same standards apply to this request, which should also be rejected by the Court.

First, the equities and the public interest again strongly weigh against the injunction. The petitioning period began back in April and will end on May 31, 2022, six days after the hearing on Plaintiffs' injunction. Candidates have been collecting signatures in reliance on these rules, and to change them now at the eleventh hour would result in confusion and disruption. Moreover, given the unprecedented demands on state election officials with respect to both the June and August primary elections, the State would be substantially prejudiced by having to move the ballot access process for independent candidates to later in the election calendar. Even in light of the recently issued map for Congressional districts on May 21,[8] there is more than sufficient time remaining for independent candidates to ensure their petitions meet the modest distribution requirements. On the other hand, the interest of voters in having hypothetical independent candidates participate in a new round of ballot access is extremely attenuated.

Second, Plaintiffs fail to show that they will suffer immediate, irreparable harm if the deadlines for independent nominating petitions are not extended. Plaintiffs cannot show that there is an actual candidate whom they wish to vote for who cannot meet the requirements due to the new Congressional maps. Notably, the Supreme Court in Steuben County responsible for the remedial relief already considered whether candidates would be harmed absent a modification to the existing requirements, and determined they would not be. *See Harkenrider*, Index No. E2022-0116CV, Dkt. Nos. 409 & 668. So too, Plaintiffs will not suffer any harm if the independent nominating petition process moves forward.

---

[8]     *See Harkenrider v. Hochul*, Index No. E2022-0116CV, Dkt. No. 670 (Sup. Ct., Steuben Cty. May 21, 2022).

Finally, for the same reasons that candidates (and, thus, voters) will not be harmed absent a modification of the existing rules, Plaintiffs cannot establish a strong likelihood of success on their constitutional claims. Plaintiffs' request for a preliminary injunction that would scuttle the independent nominating petition process days before it is set to conclude should be denied.

## **<u>CONCLUSION</u>**

For the reasons set forth above, State Defendants respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction, together with such other and further relief as the Court deems just and proper.

Dated:  New York, New York
        May 23, 2022

                              Respectfully submitted,

                              LETITIA JAMES
                              Attorney General of the State of New York
                              *Attorney for State Defendants*
                              By:

                              _____
                              Erin Kandel
                              Assistant Attorney General
                              28 Liberty Street – 17th Floor
                              New York, NY 10005
                              Tel: (212) 416-6536