UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF NEW YORK STATE, PETRA GOPFERT, and LOULISE ERKSINE,<br><br>                   *Plaintiffs*,<br><br>v.<br><br>PETER S. KOSINSKI, in his official capacity as Co-Chair of the State Board of Elections; DOUGLAS A. KELLNER, in his official capacity as Co-Chair of the State Board of Elections; ANDREW J. SPANO, in his official capacity as Commissioner of the State Board of Elections; ANTHONY J. CASALE, in his official capacity as Commissioner of the State Board of Elections; TODD D. VALENTINE, in his official capacity as Co-Executive Director of the State Board of Elections; and KRISTEN ZEBROWSKI STAVISKY, in her official capacity as Co-Executive Director of the State Board of Elections,<br><br>                   *Defendants*. | 1:22-cv-4084 (PAE) |

**AMENDED MEMORANDUM OF LAW IN FURTHER
SUPPORT OF  PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION**

 

Holwell Shuster & Goldberg LLP
425 Lexington Avenue
New York, NY 10017
(646) 837-5151

*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... i

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT ............................................................................................................................2

I.      Plaintiffs Are Likely To Succeed On The Merits ................................................. 2

II.     Plaintiffs Have Shown Irreparable Harm.............................................................. 5

III.    The Equities Sharply Favor The Voters, Not The Government ......................... 7

        A.    Defendants' Administrative Burden Does Not Trump The Right To Vote............ 7

        B.    *Purcell* Favors Granting Relief, Not Rejecting It ...................................................... 9

        C.    Plaintiffs Brought Suit Promptly ........................................................................... 10

CONCLUSION.......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ................................................................................................................ 6

*Env't Servs., Inc. v. Recycle Green Servs., Inc.*,
   7 F. Supp. 3d 260 (E.D.N.Y. 2014) ...................................................................................... 10

*FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*,
   2015 WL 4162757 (E.D.N.Y. July 8, 2015) ......................................................................... 10

*Feldman v. Arizona Sec'y of State's Off.*,
   843 F.3d 366 (9th Cir. 2016) ................................................................................................. 10

*Gallagher v. New York State Bd. of Elections*,
   477 F. Supp. 3d 19 (S.D.N.Y. 2020) .................................................................................. 7, 9

*Green Party of N.Y. State v. N.Y. State Bd. of Elections*,
   389 F.3d 411 (2d Cir. 2004) .................................................................................................... 6

*Harkenrider v. Hochul*,
   2022 WL 1236822 (N.Y. Apr. 27, 2022) ............................................................................ 4, 8

*Jones v. U.S. Postal Serv.*,
   488 F. Supp. 3d 103 (S.D.N.Y. 2020) .................................................................................... 1

*League of Women Voters of N. Carolina v. North Carolina*,
   769 F.3d 224 (4th Cir. 2014) ................................................................................................. 10

*Lerman v. Bd. of Elections in City of New York*,
   232 F.3d 135 (2d Cir. 2000) .................................................................................................... 3

*Libertarian Party of Connecticut v. Lamont*,
   977 F.3d 173 (2d Cir. 2020) .................................................................................................... 3

*Libertarian Party of New York v. N.Y. Bd. of Elections*,
   539 F. Supp. 3d 310 (S.D.N.Y. 2021) .................................................................................... 2

*Lucas v. Townsend*,
   486 U.S. 1301 (1988) .............................................................................................................. 8

*Madera v. Detzner*,
   325 F. Supp. 3d 1269 (N.D. Fla. 2018) .................................................................................. 9

*Moritt v. Governor of New York*,
    42 N.Y.2d 347 (1977) ................................................................................................... 6

*N.Y. Progress & Protection PAC v. Walsh*,
    733 F.3d 483 (2d Cir. 2013) ......................................................................................... 2

*People First of Ala. v. Ala.*,
    815 F. App'x 505 (11th Cir. 2020) ............................................................................... 9

*People First of Alabama v. Merrill*,
    491 F. Supp. 3d 1076 (N.D. Ala. 2020) ..................................................................... 10

*Prestia v. O'Connor*,
    178 F.3d 86 (2d Cir. 1999) ........................................................................................... 2

*Price v. N.Y. State Bd. of Elections*,
    540 F.3d 101 (2d Cir. 2008) ......................................................................................... 6

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006) .......................................................................................................... 9

*Rockfeller v. Powers*,
    74 F.3d 1367 (2d Cir. 1995) ..................................................................................... 6, 7

*Stanley v. Illinois*,
    405 U.S. 645 (1972) ...................................................................................................... 1

*Tashjian v. Republican Party of Connecticut*,
    479 U.S. 208 (1986) ...................................................................................................... 8

*Watson v. City of Memphis*,
    373 U.S. 526 (1963) ...................................................................................................... 1

*Wilder v. Virginia Hosp. Ass'n*,
    496 U.S. 498 (1990) ...................................................................................................... 7

*Yang v. Kellner*,
    458 F. Supp. 3d 199 (S.D.N.Y. 2020) .......................................................................... 8

*Yang v. Kosinski*,
    960 F.3d 119 (2d Cir. 2020) ......................................................................................... 7

**Statutes**

Election Law § 6-136 ............................................................................................... 3, 4, 6

Election Law § 6-136; (2) ............................................................................................. 3

Election Law § 6-142 ................................................................................................... 5

**PRELIMINARY STATEMENT**

Defendants advance a number of remarkably specious arguments to justify their unlawful electoral scheme. On the merits, they claim that—notwithstanding the Steuben Court's invalidation of the congressional maps on March 31, a holding affirmed all the way through the New York Court of Appeals—a stay entered on April 1 by the Appellate Division of the trial court's prohibitory injunction somehow transformed expressly invalidated congressional maps into "a valid Congressional district map during the entirety of the petitioning period." Opp. 21.[1] Thus, they claim, they were authorized to certify the statewide primary ballots on May 4. This makes no sense. The stay was just that—a stay—not a magic wand turning constitutionally polluted water into fine wine. They fare no better on the rest of their arguments. To justify depriving independent voters of their First Amendment rights, Defendants assert, without support, that "there is more than sufficient time" for independent candidates to gather signatures. Opp. 23. But the Constitution demands more than such *ipse dixit*.

As for the equities and public interest, Defendants claim that the very electoral process they unlawfully put into motion bars the Court from remedying their constitutional violation. But "[t]he Bill of Rights was 'designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy.'" *Jones v. U.S. Postal Serv.*, 488 F. Supp. 3d 103, 138-39 (S.D.N.Y. 2020) (quoting *Stanley v. Illinois*, 405 U.S. 645, 656 (1972)). "Thus, the Supreme Court has held that the 'vindication of conceded constitutional rights cannot be made dependent upon any theory that it is less expensive to deny than to afford them.'" *Id.* (quoting *Watson v. City of Memphis*, 373 U.S. 526, 537 (1963)). Whatever the unfortunate expense now entailed in complying with the Constitution and state law, Defendants are the ones who

---

[1] "Opp." refers to Defendants' memorandum of law, *see* Dkt. 21.

heedlessly charged ahead even after the Court of Appeals' decision on April 27. Aside from the expense in rescheduling the statewide primary (an expense they apparently are not troubled by with regard to the rescheduled congressional and State Senate primaries), Defendants invoke voter confusion. But Defendants nowhere explain why a prompt advisory alerting voters that the statewide primary has been rescheduled—which advisory they posted for Congress and State Senate[2]—would not eliminate any such confusion, or why holding two primaries over the summer is not likely to engender *more* voter confusion.[3] This Court should enter the injunction.

## ARGUMENT

**I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS**

"Consideration of the merits is virtually indispensable in the First Amendment context, where the likelihood of success on the merits is the dominant, if not the dispositive, factor." *N.Y. Progress & Protection PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). Unsurprisingly, Defendants barely address the merits. And the arguments they do make fall flat.

To assess the constitutionality of Defendants' electoral regime, this Court should "consider the alleged burden imposed by the challenged provision *in light of the state's overall election scheme*." *Libertarian Party of New York v. N.Y. Bd. of Elections*, 539 F. Supp. 3d 310, 321 (S.D.N.Y. 2021) (emphasis added); *see Prestia v. O'Connor*, 178 F.3d 86, 88 (2d Cir. 1999) (evaluating New York's petition requirements as a portion of the "election scheme"). Defendants have imposed an electoral process in which (1) would-be candidates for statewide office may *not* seek to qualify for the primary ballot under valid congressional maps pursuant to Election Law

---

[2] New York State Board of Elections, https://www.elections.ny.gov/ ("The Supreme Court has ordered Congressional and State Senate elections to be held Tuesday, August 23rd, 2022.") (last accessed on May 24, 2022).

[3] Joshua Solomon, *Legislative Deal Heats Up*, Albany Times Union (May 15, 2022) (mistakenly noting primaries are to be held June 23 and August 28), *available at* https://www.timesunion.com/state/article/With-political-maps-due-this-week-legislative-17171932.php?IPID=Times-Union-capcon-state-4pack.

2

§ 6-136; (2) if such candidates were to run for statewide office, they would need to run as independent candidates and then *could* seek to qualify for the general-election ballot under valid congressional maps, but have only *10 days* to garner the requisite signatures from half of the congressional districts; and (3) the certified primary ballot for statewide office consists entirely of candidates who did *not* qualify under valid congressional maps. *Lerman v. Bd. of Elections in City of New York*, 232 F.3d 135, 146–47 (2d Cir. 2000) ("[P]etition circulation bears an intimate relationship to the right to political or expressive association.").

Just to recite this sorry state of affairs is to show its arbitrary and discriminatory character. *See* Pltf. Memo. at 15–23.[4] Voters are barred from supporting their preferred candidates in the primary, whilst choosing only between unlawfully certified candidates, and then—if their preferred candidates run as independents—these voters will face more onerous difficulties in gathering signatures and supporting those preferred candidates in the general election. The end result is "exclusion or virtual exclusion from the ballot"—"the hallmark of a severe burden." *Libertarian Party of Connecticut v. Lamont*, 977 F.3d 173, 177 (2d Cir. 2020). In response to all this, Defendants have but makeweight.

***Exclusion of Candidates from the Primary Ballot.*** After reciting two pages of general legal principles on election regulation, Defendants claim no constitutional violation occurred because they complied with Election Law § 6-136; they say the "stay granted by the Fourth Department" meant "there was a valid Congressional district map during the entirety of the petitioning period for statewide designating petitions." Opp. 21. This is sheer fantasy. The New York Court of Appeals plainly (1) held that "the enactment of the congressional . . . maps . . . was procedurally unconstitutional, and . . . also substantively unconstitutional . . . leaving the

---

[4] "Pltf. Memo." refers to Plaintiffs' memorandum of law, *see* Dkt. 10.

state without constitutional district lines for use in the 2022 primary and general elections"; and (2) "rejected" the State's argument that "the 2022 congressional . . . elections be conducted using the unconstitutional maps." *Harkenrider v. Hochul* ("*Harkenrider III*"), 2022 WL 1236822, at \*11 (N.Y. Apr. 27, 2022). "Where, as here," the court explained, "legislative maps have been determined to be unenforceable, we are left in the same predicament ***as if no maps had been enacted***." *Id.* at \*12 (emphasis added).

Disregarding that decision, Defendants did what the court forbade—blithely assume there *were* "constitutional district lines for use in the 2022 primary and general elections"—and days later certified the statewide primary ballot. Moreover, despite what Defendants claim, no language lurks in Election Law § 6-136[5] that suggests designating petitions for statewide office can be validated based on invalid congressional maps. In any event, Defendants mischaracterize the stay—as the Court of Appeals observed, "Supreme Court, as permitted by the stay, ha[d] procured the services of a neutral redistricting expert 'to . . . prepare and draw a new neutral, non-partisan [c]ongressional map'" that would have "force and effect" once "certain contingencies occurred." *Harkenrider III*, 2022 WL 1236822, at \*4 & n.6. And even if the March 1 to April 7 signature-gathering period were relevant, the Steuben trial court invalidated the congressional maps on ***March 31***, which both the Fourth Department and the Court Appeals affirmed. Defendants can find no shield for their actions in a temporary stay pending appeal.

***Exclusion of Independent Candidates from the General-Election Ballot***. Defendants conjure even less justification for the harm wrought by the truncated period for independent candidates to collect signatures for independent nominating petitions—one throwaway line at the

---

[5] Election Law § 6-136 requires that "[p]etitions" for statewide office "must" have signatures from voters who "shall reside in each of one-half of the congressional districts of the state."

4

end of their brief. Opp. 24. And, given that Defendants cannot even claim that the filing deadline for these petitions has passed, *see* Dkt. No. 22 ("Stavisky Decl.") ¶ 19 (last day to file such petitions is May 31, 2022), there is no justification for this harm.

The Election Law requires considerably more of independent candidates: They must gather *three* times more signatures—45,000, rather than 15,000 for designating petitions—and must fulfill a congressional-district distribution requirement. *See* Election Law § 6-142. Ordinarily, a candidate has six weeks. *Id.* § 6-138(4). But despite the unconstitutionality of the congressional maps, Defendants have left candidates with a mere 10 days from the date when constitutional districts were adopted. *See* Stavisky Decl. ¶ 19. Gathering the requisitely-distributed signatures under the valid maps in 10 days is a virtually impossible task, a contention Defendants do not dispute—they can only assert that extending the period will result in "confusion and disruption." Opp. 23. ***Why*** extending this period would be more confusing than the patchwork of modifications already made to the State's election scheme is unexplained.

Indeed, U.S. Congress and State Senate candidates seeking ballot access through designating petitions—even those who had *not* previously submitted designated petitions—have been afforded a new window to secure those signatures, unlike statewide candidates. *See* Dkt. 5 ("Goldman Decl.") Ex. D at 2–3. And the signature requirements the Steuben Court imposed on those candidates, either 850 or 1,062, *id.*, are far less onerous than those for independent statewide candidates. Defendants' electoral regime thus "unfairly and unnecessarily burdens the availability of political opportunity" for "independent-minded voters." *Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983).

## II. PLAINTIFFS HAVE SHOWN IRREPARABLE HARM

As Defendants cannot dispute, "where a First Amendment right has been violated, the irreparable harm requirement for the issuance of a preliminary injunction has been satisfied."

5

*Green Party of N.Y. State v. N.Y. State Bd. of Elections*, 389 F.3d 411, 418 (2d Cir. 2004); Op. 27. To bypass that settled rule, Defendants resort to the meritless contention that Plaintiffs' "alleged harm is completely speculative."[6] Opp. 18-19.

Plaintiffs' harm is far from speculative. As for the primaries, they wish to support candidates beyond those certified on the primary ballot, but are deprived of the opportunity to engage in such protected speech and voting. Gopfert Aff. ¶ 12; Erskine Aff. ¶ 13; Rosenthal Aff. ¶ 8; Doran Aff. ¶¶ 12, 17-18 ; *see Price v. N.Y. State Bd. of Elections*, 540 F.3d 101, 108 (2d Cir. 2008) (voters barred from casting absentee ballots, not for any specific candidate, experienced "burden on [their] associational rights"). Thus, for example, in *Rockefeller v. Powers*, the Second Circuit explained that plaintiffs challenging the unequal impact of signature requirements "need not establish that, absent the current rule, they *necessarily* would see more candidates on the ballot"; their "claim [was] that the rule decreases the likelihood that they will have choices among delegates." 74 F.3d 1367, 1376 (2d Cir. 1995). The same situation is present here.

Additionally, Defendants say Election Law § 6-136 imposes only a "modest" requirement and does not factor into candidates' decision-making at all. Opp. 18. As Plaintiffs explained, however, the composition of the congressional maps is no technicality in the statewide candidate's calculus; that is why New York enacted § 6-136. *Moritt v. Governor of New York*, 42 N.Y.2d 347, 350 (1977) (recognizing "important State interest" in "geographical distribution requirement"). Defendants' argument amounts to the untenable contention that § 6-136 does not actually serve any function. *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 514 (1990) ("reject[ing] . . . argument [that] would render the statutory requirements . . . essentially meaningless").

---

[6] Defendants also say that Plaintiffs supposedly engaged in "undue delay" in bringing this suit. Opp. 19. As discussed below, that is meritless. *Infra* Section III.C.

Plaintiffs similarly are injured by the onerous requirements for independent candidates. *See Rockefeller*, 74 F.3d at 1376. Defendants state only that "Plaintiffs cannot show that there is an actual candidate whom they wish to vote for who cannot meet the requirements[.]" Opp. 23. But Plaintiffs and a League voter attest that they would support an independent candidate for statewide office, and even name specific candidates. Gopfert Aff. ¶¶ 19-20; Erskine Aff. ¶¶ 20-21; Rosenthal Aff. ¶ 8.

### III. THE EQUITIES SHARPLY FAVOR THE VOTERS, NOT THE GOVERNMENT

"[I]n light of the importance of the right to political participation in a primary election," Plaintiffs "have shown that, absent injunctive relief, their First Amendment rights" to support their preferred candidates in the 2022 statewide primary "likely would be forever extinguished. That is surely a 'significant' hardship that the Board has not adequately justified." *Yang v. Kosinski*, 960 F.3d 119, 136 (2d Cir. 2020). So too for independent voters in seeking ballot access for candidates in the general election. As against these weighty interests, Defendants invoke the specter of "severe[] disruption[]" and "mass voter confusion." Opp. 14, 15. But that argument gets the analysis backwards. "There is a strong public interest in granting an injunction" where "securing First Amendment rights" are at stake. *Gallagher v. N.Y. State Bd. of Elections*, 477 F. Supp. 3d 19, 50 (S.D.N.Y. 2020).

#### A. Defendants' Administrative Burden Does Not Trump The Right To Vote

Defendants state that ballots have been printed (Opp. at 13), some ballots have been mailed (*id*.), "[t]ime-sensitive and "costly" logistical arrangements have been put into place (*id.* at 14), and voters have been informed about various election-day procedures (*id*.). This smorgasbord of administrative concerns does not preclude the relief sought. *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 218 (1986) (Marshall, J.) ("the possibility of

7

future increases in the cost of administering the election system is not a sufficient basis here for infringing appellees' First Amendment rights").

*First*, Defendants have no one to blame but themselves. Defendants brush aside the critical fact that, on May 4, 2022—over a week after the Court of Appeals invalidated the congressional maps—they certified primary ballots based on the unlawful maps. *See* Goldman Decl., Ex. A. Indeed, Defendants knew at least as of March 31—when the Steuben Court voided the congressional maps—that changes to the primaries might be needed. On April 27, in striking down the maps, the Court of Appeals explained it was "confident that, in consultation with the Board of Elections" the State could "swiftly develop a schedule to facilitate an August primary election." *Harkenrider III*, 2022 WL 1236822, at *12. Despite this confidence, Defendants barreled ahead and certified the June 28 primary. Thus, "although an injunction would doubtless place certain burdens on respondents, such burdens can fairly be ascribed to the respondents' own failure to [act] sufficiently in advance of the date chosen for the election." *Lucas v. Townsend*, 486 U.S. 1301, 1305 (1988) (Kennedy, J., in chambers).

*Second*, these self-induced administrative and fisc-related concerns must be weighed against the real harm that New York's regime inflicts on voters' First Amendment rights. *See Yang v. Kellner*, 458 F. Supp. 3d 199, 217 (S.D.N.Y. 2020) ("The cost to Defendants of granting the requested relief [is] significant. Defendants estimate that conducting the presidential primary will require 615 additional poll sites, 22 additional early voting sites, 4,617 additional poll workers, and will cost the state approximately $5.6 million. The state undertook to bear those costs, however, when it assumed the responsibility of regulating and holding the primary election[.]"). Indeed, "[a]dministrative expense" is almost always "far out-outweighed by the fundamental right at issue." *Madera v. Detzner*, 325 F. Supp. 3d 1269, 1283 (N.D. Fla. 2018).

8

Just recently, Judge Torres issued an injunction where the Board of Elections advanced the same concerns—it would be a "very substantial and burdensome task . . . to recanvass"; "tens of thousands of person hours" would be required; and the "boards of elections [we]re already extraordinarily overburdened." *Gallagher*, 477 F. Supp. 3d at 49. Plaintiffs "do[] not take these burdens lightly." *Id*. But they do not trump the First Amendment rights infringed by Defendants.

### B.     *Purcell* Favors Granting Relief, Not Rejecting It

Defendants also invoke *Purcell v. Gonzalez*, 549 U.S. 1 (2006). In this vein, Defendants posit the possibility of rampant voter and vote-tabulation confusion—references to "reprogramming machines," "hand counting" and "ballot chaos." Opp. at 15. That does not trump the First Amendment. "*Purcell* is not a magic wand that defendants can wave to make any unconstitutional election restriction disappear so long as an impending election exists." *People First of Ala. v. Ala.*, 815 F. App'x 505, 514 (11th Cir. 2020). And the Court of Appeals itself rejected the notion that the "logistical difficulties" of "rescheduling a primary election" outweigh the harm caused by the use of infirm maps. *Harkenrider III*, 2022 WL 1236822, at *12.

Anyway, it is difficult to credit Defendants' fear that rampant chaos will ensue by adjourning the primary for two months. On May 3, Defendants wrote that "New York" would not be "unique in moving its primary to make more time" and that "[m]ultiple states this year have moved their primary elections;" accordingly, "**New York is capable of having new lines in time for a primary election on August 23, 2022**." Goldman Decl., Ex. E (emphasis added). If this statement was true on May 3, then it is hard to believe that by the time this suit was instituted on May 18, chaos would reign if the statewide primaries were held August 23.

Moreover, *Purcell* counsels in favor of abstention particularly where "voter confusion" created by court orders would "incent[] [voters] to remain away from the polls." 549 U.S. at 4–5. The opposite is true here. Voters are more likely to be confused by two primary dates, *supra* n.3,

9

and turnout is likely to be higher with one primary date. Moreover, the remedy for any voter confusion is simply posting an advisory notice on the Board of Elections' website, which Defendants have already done for the August 23 primary, or sending a similar notice by mail. The fact that some ballots have been mailed to or used by voters is also not enough; the "[re]counting of a relatively small number of ballots" does not tilt the "public interest [from] weigh[ing] heavily in Plaintiffs' favor." *League of Women Voters of N. Carolina v. North Carolina*, 769 F.3d 224, 248 (4th Cir. 2014).

### C. Plaintiffs Brought Suit Promptly

Defendants repeatedly insist that Plaintiffs were dilatory in bringing this case. Nonsense. Defendants certified the primary ballot on May 4; Plaintiffs instituted this case two weeks later. *Feldman v. Arizona Sec'y of State's Off.*, 843 F.3d 366, 370 (9th Cir. 2016) (*Purcell* did not require abstention because plaintiffs filed suit "less than ***six weeks*** after the passage of legislation") (emphasis added). Defendants' suggestion that Plaintiffs could have intervened in the state trial court in March or April is fantastical. Defendants surely would have argued lack of ripeness; the ballot had not yet been certified, and the Court of Appeals had not ruled. Accordingly, "defendants cannot have it both ways by now contending, essentially, that the plaintiffs should have also moved for a preliminary injunction for the [June] election in [April or March], at a time when the [situation] was 'speculative.'" *People First of Alabama v. Merrill*, 491 F. Supp. 3d 1076, 1142–43 (N.D. Ala. 2020).[7]

### CONCLUSION

The preliminary injunction should be granted.

---

[7] In Defendants' cited cases, plaintiffs delayed seeking relief given *already occurring* injury. *See Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 279 (E.D.N.Y. 2014) (ongoing theft); *FC Online Mktg., Inc. v. Burke's Martial Arts, LLC*, 2015 WL 4162757, at *2 (E.D.N.Y. July 8, 2015) (ongoing trademark infringement).

Dated: May 24, 2022
      New York, New York

    Respectfully submitted,

    HOLWELL SHUSTER & GOLDBERG LLP

    By: /s/ *Gregory Dubinsky*
    Gregory Dubinsky
    James M. McGuire
    Brian T. Goldman
    Jan Jorritsma (*pro hac vice* forthcoming)
    Daniel K. Phillips (*pro hac vice* forthcoming)

    425 Lexington Avenue
    New York, NY 10017
    (646) 837-5151
    gdubinsky@hsgllp.com

    *Attorneys for Plaintiffs*